hPER CURIAM.*
This matter arises from one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, James F. Quaid, an attorney who has been disbarred on two previous occasions.[1] The charges allege violations of Rules 1.4, *105 1.5(a), 1.5(d)(1), 1.16(d), 8.1(c), 8.4(a), (c) and (g) and 5.5 of the Rules of Professional Conduct.[2]
UNDERLYING FACTS
In October 1994, Karain Marie Vitrano retained respondent to represent her in connection with a community partition matter. Although he filed a petition to partition community property, he took no further action other than communicating with his client briefly by phone. On February 16, 1995, several months after being hired by Ms. Vitrano, respondent was disbarred from practice (for the second time). Nonetheless, he failed to advise his client of this fact.
By the fall of 1995, the community property matter was resolved by the parties themselves through the assistance of another attorney “sitting in” for respondent, who was allegedly ill. Respondent charged his client a contingency fee based on the value of community assets, charging the client a total fee of $29,892.00, despite the fact he had done little or no work on the case.
| gLater, when Ms. Vitrano learned that much of the paper work from the community property matter had not been provided to her in complete form and that respondent had been disbarred shortly after she retained him, she filed a complaint with the ODC advising of respondent’s misconduct. When respondent failed to comply with the ODC’s requests for information, a subpoena was issued compelling his attendance for his scheduled deposition on January 21, 1997. Respondent stated that he “goofed” and “completely forgot about [the complaint].” While acknowledging he had a 50% contingency fee arrangement with Ms. Vitrano, he denied being aware that such an arrangement was impermissible under the professional rules. Further, he denied having performed any legal work for her beyond the time when he was disbarred; thus, he claimed that he had finished all negotiations which resolved the community partition between October 1994 and February 1995. He clarified that he received approximately $29,500 in legal fees for five months of work consisting of drafting and filing a community property partition and drafting a proposed judgment. He stated that he had verbal conversations with Mr. Vitra-no’s attorney, Mary Petrucelli, wherein they negotiated the sale of the family home and the division of bank accounts and pension funds; however, he was unable to produce any paper files or correspondence in support. Finally, he claimed to have notified his client that he had been disbarred within the thirty day requirement set forth in Supreme Court Rule XIX, § 26.
On April 22,1997, the ODC deposed Ms. Petrucelli, who stated that she first knew respondent was involved .with the' case when he filed the petition for partition on October 17, 1994 along with the descriptive list. She noted the petition was a standard, boilerplate petition, and that Mr. Vitrano never had a problem about paying his ex-wife the pension amounts. Further, Ms. Petrucelli never heard from respondent until around September 11 or 12, 1995, after she filed a Motion to Fix the Matter for trial attempting to “smoke him out” because she had seen the announcement earlier in the bar journal stating that he was disbarred, but he had not communicated that fact to her nor substituted counsel. She maintained that she thought at the time it was peculiar that he did not call her to see why she had not filed the descriptive list when she answered the petition in December 1994. Then in the summer of 1995 when she filed Mr. Vitra- *106 no’s descriptive list, she also did not hear from respondent nor any other attorney on Ms. Yitrano’s behalf. In September 1995, she filed a Motion to Fix and the judge set the hearing for October 3, 1995. | «Respondent called and told her that another attorney would be substituted to represent Ms. Vitrano.
DISCIPLINARY PROCEEDINGS
One month after taking Ms. Petrueelli’s deposition, the ODC instituted formal charges and the respondent failed to answer. Accordingly, no formal hearing was conducted, and the parties were ordered to submit evidence and written arguments on the issue of sanctions.

Hearing Committee Report

The hearing committee found respondent violated duties to his client and the legal system by charging a clearly excessive fee, continuing to engage in the unauthorized practice of law after his disbarment, deceiving his client and failing to cooperate with the ODC. Further, it concluded the respondent acted intentionally and that the actual injury caused by respondent’s misconduct was substantial. While it failed to recognize any factors in mitigation, it noted the presence of several aggravating factors,[3] particularly respondent’s prior disciplinary record.[4] Based on these factors, the hearing committee recommended the respondent be disbarred from practice from the effective date of this court’s order and that restitution for the full amount of the fees charged Ms. Vitrano be made executory with no allowance for any fee earned by respondent because of the length of time he withheld Ms. Vitrano’s funds from her. Further, as a condition to readmission, the committee proposed the respondent re-take the bar examination and the MPRE within one year | ¿preceding the date of application for readmission. Finally, the committee recommended that respondent be assessed with all of these proceeding costs.

Disciplinary Board Report

The disciplinary board initially noted there was no violation of Rule 1.5(d)(1), the rule pertaining to contingency fee arrangements in a domestic matter. It stated that the rule prohibits fee arrangements which are contingent upon “the securing of a divorce or upon the amount of alimony or support, or settlement in lieu thereof.” The board recognized the respondent had a contingency fee agreement pertaining to a partition which occurred after the divorce .[5]
Nonetheless, the board agreed that disbarment was the appropriate sanction. Relying on ABA Standard 8.1[6] and juris *107 prudence[7] from this court, it determined the baseline sanction is disbarment and that no facts exist which would warrant a downward departure from the baseline sanction.
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board.
DISCUSSION
The record clearly supports the recommendation of disbarment. Respondent’s actions, including his charging of an excessive fee, continuing to engage in the unauthorized practice of law after his disbarment, deceiving his client and failing to cooperate with the ODC, combined |Kwith his extensive prior disciplinary record, convincingly demonstrates that respondent lacks the fitness to practice law. Under these circumstances, disbarment is the appropriate sanction.
We recognize respondent is currently disbarred. However, as recognized in Louisiana State Bar Ass’n v. Krasnoff, 502 So.2d 1018 (La.1987), this court has the authority to extend the minimum period for readmission. Accordingly, we will extend the minimum period within which respondent may seek readmission for a period of five years, commencing from the finality of this judgment.
DECREE
Having considered the findings and recommendations of the disciplinary board and the hearing committee, and considering the record herein, it is the judgment of this court that the recommendation of the disciplinary board be accepted. Aecord-ingly, it is ordered that the minimum period within which respondent may seek readmission be extended for a period of five years, commencing from the finality of this judgment. Respondent is further ordered to make restitution to his client. All costs and expenses of these proceedings are assessed to respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence running thirty days from the date of finality of judgment until paid.

 Johnson, J. not on panel. Rule IV, Part II, § 3.

. In In re: Quaid, 94-1316 (La.2/16/95); 646 So.2d 343, respondent was disbarred for assessing an excessive fee in a Social Security case and seeking to cover up his misconduct. In Louisiana State Bar Ass’n v. Quaid, 368 So.2d 1043 (La.1979), respondent was disbarred for misconduct involving theft of securities.

. Rules 1.4 (failing to comply with reasonable requests for information), 1.5(a) (charging an unreasonable fee), 1.5(d)(l)(charging a contingency fee in a domestic matter), 1.16(d) (termination of representation), 8.1(c) (failing to cooperate with the ODC in its investigation), 8.4(a) (violating the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving fraud, deceit, dishonesty or misrepresentation), 8.4(g) (failing to cooperate with the ODC) and 5.5(a) (engaging in the unauthorized practice of law) of the Rules of Professional Conduct.

. The hearing committee recognized the following aggravating factors:
1. prior disciplinary record;
2. dishonest or selfish motive;
3. multiple offenses;
4. pattern of misconduct;
5. bad faith obstruction of the disciplinary process;
6. using deceptive practices during the disciplinary process;
7. refusal to acknowledge the wrongful nature of his conduct;
8. vulnerability of the victim;
9. substantial experience in the practice of law; and
10. indifference to making restitution.

. Respondent received two formal private reprimands in June of 1970. Respondent was disbarred effective September 30, 1976 based on his conviction for burglary involving theft of securities. Louisiana State Bar Ass'n v. Quaid, 368 So.2d 1043 (La.1979). In July of 1987, after he was readmitted to practice, respondent received another formal private reprimand for neglect of a legal matter. On February 16, 1995, respondent was disbarred for charging an excessive fee, lying about it and attempting to cover it up, as well as attempting to perpetuate frauds upon both the Social Security Administration and this court. In re: Quaid, 94-1316 (La.2/16/95), 646 So.2d 343.

. The Vitranos were divorced on August 29, 1992 and the respondent was not hired to handle the partition until two years later.

. Standard 8.1 of the ABA Standards for Imposing Lawyer Sanctions provides:
Disbarment is generally appropriate when a lawyer (a) intentionally or knowingly violates the terms of a prior disciplinary order *107 and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or (b) has been suspended for the same or similar conduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

. The board relied on In re: White, 97-2731 (La.2/6/98), 706 So.2d 964, where an attorney, who had a lengthy disciplinary record, was disbarred for charging an excessive fee, failing to use due diligence, failing to communicate and failing to cooperate with ODC. Additionally, it cited In re: Watkins, 95-0459 (La.6/16/95), 656 So.2d 984, where an attorney without a prior disciplinary record was suspended for two years after being convicted for unlawful altering of medical documents and making false statements to a Social Security tribunal.