502 So.2d 1018 (1987)
LOUISIANA STATE BAR ASSOCIATION
v.
Sanford KRASNOFF.
No. 85-B-1668.
Supreme Court of Louisiana.
February 23, 1987.
*1019 Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerard F. Thomas, Jr., Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pe, Metairie, for applicant.
Sanford Krasnoff, New Orleans, for respondent.
COLE, Justice.
Sanford Krasnoff, respondent, was disbarred in a prior proceeding for violations of Disciplinary Rules 1-102, 6-101(A)(3) and 9-102. Louisiana State Bar Association v. Krasnoff, 488 So.2d 1002 (La.1986).
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disciplinary proceeding against Krasnoff, a member of the Bar practicing in New Orleans, by Petition for Disciplinary Action filed August 22, 1985. The pleadings specified violations of Disciplinary Rules 9-102 and 1-102(A) of the Code of Professional Responsibility of the Louisiana State Bar Association.[1] This disciplinary proceeding concerns additional acts of misconduct occurring while the respondent was still a member of the Louisiana Bar. The proceeding presents an unusual problem in that the respondent is currently disbarred. We are faced not only with adjudication of the merits of this disciplinary action, but also must consider the posture of our jurisdiction over the respondent and the appropriate disciplinary penalty.

*1020 JURISDICTION
The final authority to regulate the practice of law has been vested in the Court by our Constitution. This authority stems from the grant of exclusive original jurisdiction in disciplinary actions instituted against members of the bar. La. Const. art. V, § 5(B). See also, Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La. 1979). Our jurisdiction over disciplinary proceedings has been construed not as a limitation upon our inherent power, but rather as a grant to us of plenary power in disciplinary proceedings. Singer Hutner Levine Seeman & Stuart v. La. State Bar Ass'n, 378 So.2d 423 (La.1979). Under this authority, we have promulgated and adopted as rules of this court the Articles of Incorporation of the Louisiana State Bar Association, in which Articles is now included in the Code of Professional Responsibility. The Code of Professional Responsibility regulates attorneys' practices and has been recognized as having the force and effect of substantive law. In the exercise of this authority it is our duty to adjudicate individual cases of attorney misconduct as they arise. Of particular concern are those cases involving accusation of misuse or commingling of a client's funds. Such abuses represent the gravest form of professional misconduct and strike at the heart of the public's confidence in the legal profession. La. State Bar Ass'n v. Zeringer, 447 So.2d 466 (La.1984). Additionally, our authority covers not only disciplinary proceedings, but extends to proceedings by a disbarred attorney for reinstatement. Article XV, § 12, Articles of Incorporation of the La. State Bar Association.
In this case, we consider whether it is appropriate for this court to address charges of attorney misconduct, instituted while the lawyer was a member of the bar, but presented to us after his disbarment has been ordered in a separate proceeding. It is evident additional complaints of attorney misconduct surface frequently after initial charges are made public. No specific authority has been enacted encompassing the procedure for post-disbarment disciplinary actions. It is necessary to look at the underlying purpose of such actions in determining jurisdiction applicability.
As this court has stated in the past, the purpose of lawyer discipline is not so much to punish the errant attorney as it is to maintain appropriate standards of professional conduct necessary to protect the public and the administration of justice. Zeringer, supra. Naturally, where the complaint alleges misuse of client funds, it is the duty of the court to hear all such matters as they arise. This is necessary for the proper administration of justice and to insure public confidence in the legal profession's ability to regulate and discipline its members. Accordingly, we find our exclusive jurisdiction in disciplinary matters allows us to hear and act upon all complaints of misconduct alleged to have occurred while an attorney was a member of the bar and regardless of whether or not the attorney has already been disbarred. This finding is consistent with the explicit mandates and the obvious intent of the disciplinary scheme included in the Articles of Incorporation of the Bar Association. The Court's jurisdiction over a disbarred attorney is continuing as evidenced by our decisional authority to readmit or not to readmit a disbarred attorney to the practice of law. Here, the misconduct occurred prior to the finality of the decision ordering respondent's disbarment. Respondent was a member of the Bar at the time the misconduct occurred and clearly the Court's jurisdiction attaches to such misconduct.
We believe it is proper for the Committee on Professional Responsibility to go forward with disciplinary proceedings regardless of the stage of development, when the misconduct occurred prior to the finality of a disbarment order. It would not be appropriate for such matters to be held in abeyance and referred to any readmission application the disbarred attorney might file. Delay in such matters would prejudice the availability of witnesses, restrict or defeat appropriate restitution, and impede fairness to the involved respondent and the complainant. In addition, delay would be *1021 inconsistent with or contrary to the duties of the Committee on Professional Responsibility set forth in mandatory language and contained in Article XV of the Articles of Incorporation of the Bar Association. It is provided the Committee shall receive and investigate all complaints of alleged unprofessional conduct; the Committee, after its investigation, shall act to dismiss, reprimand, or institute suit in the Supreme Court for disbarment or suspension; the Committee shall not defer disciplinary proceedings on the ground respondent is a party to civil litigation involving misconduct; and, the Committee shall consider conduct arising both before and after the date of disbarment. Article XV, Sections 3, 4, 6, 7(b), and 12(c). Finally, a failure by the Committee on Professional Responsibility to go forward with disciplinary proceedings regardless of the state of development, or a failure by this Court to exercise its jurisdiction and act on such matters, would inevitably damage the integrity of the legal profession and lead to a loss of respect in the minds of our citizens. Judicial economy and use of the Committee's time and resources are policy considerations which must be subordinated to the need for prompt response to complaints of professional misconduct.

FACTS
These facts appear to be uncontroverted. In July of 1979, Thomas Earl Bellanger retained Sanford Krasnoff, in his capacity as an attorney, to pursue a claim for personal injuries arising out of an automobile accident which occurred on September 17, 1978. Krasnoff filed suit on the claim on September 17, 1979, against Main Electronic, Inc., Kirk Carter, and the Hartford Insurance Company. The suit was compromised with Hartford for $12,500. A draft in that amount was issued by Hartford on November 27, 1979 payable to "Thomas Bellanger and His Attorney, Sanford Krasnoff." This draft was then deposited by Krasnoff in his general account at Century Bank on December 3, 1979. Pursuant to the arrangement between Krasnoff and Bellanger, the sum of $7,381 was due Bellanger but this sum was never withdrawn from the account for his benefit. Additionally, Krasnoff failed to maintain an identifiable client trust account. Krasnoff filed a motion to dismiss the law suit which was granted on November 29, 1979. Krasnoff has never tendered to Mr. Bellanger his share of the settlement proceeds even after suit was filed seeking recovery of the funds.

PROCEEDINGS AND EVIDENCE
The Committee on Professional Responsibility initiated these proceedings on July 27, 1985, in response to a letter of complaint from Thomas Bellanger dated December 18, 1984. A formal investigatory hearing on the complaint was held August 5, 1985. Krasnoff did not appear at the hearing though formal notice was sent to his law office by certified and regular mail. Based on the findings of that hearing, a Petition For Disciplinary Action was filed in this court August 22, 1985. On December 2, 1985 the court appointed a Commissioner to hear the case. A formal hearing on the matter was held January 23, 1986. All parties were present at the hearing.
Thomas Bellanger testified his suit against Main Electronic was settled without his knowledge or consent. Further, as late as October of 1984, nearly five years after the suit was actually settled, Krasnoff had informed him that the suit was still in litigation and a favorable settlement was likely in the next few months.
Mr. Bellanger also stated he first learned of the settlement of his suit from the records of the Civil District Court. This was later confirmed to him by The Hartford Insurance Company. After many attempts to contact Krasnoff, he retained additional counsel to seek recovery of the settlement proceeds.
Krasnoff's testimony differed drastically. Krasnoff maintained Mr. Bellanger had authorized and agreed to the settlement with Hartford. He stated Mr. Bellanger had requested he hold his portion of *1022 the settlement in trust for personal reasons.
Krasnoff admitted to depositing the settlement draft in his general operating account and never specifically withdrawing funds to benefit his client. However, Krasnoff explained it was his practice, due to tax difficulties, to set aside in cash a client's part of a settlement in a safe in his office. In support of his case, Krasnoff offered a photocopy of a settlement statement purporting to bear the signature of Thomas Bellanger below a notation stating "settlement funds to be held in cash, in escrow, in office safe (for client)." Mr. Bellanger stated he was 100% certain that the document did not bear his signature and he maintained he had never seen a copy or an original of the settlement document.
At Krasnoff's request this settlement statement was examined by a handwriting expert selected by the Commissioner. In his report to the Commissioner the expert stated:
Results of the examination:
The photocopy submitted, specimen Qcl, does not reflect all of the necessary handwriting characteristics for a positive conclusion to be reached. However, from such comparisons that could be made, there were some differences in handwriting noted with the questioned signature on specimen Qc1 and with the available known signatures of Thomas Bellanger, K1. This could suggest that the questioned signature on specimen Qc1 may not have been written by Thomas Bellanger, K1. (Emphasis added.)
Krasnoff also suggested Mr. Bellanger might have been motivated to bring these charges in order to seek revenge in connection with a political campaign in which Krasnoff ran against Mr. Bellanger's brother-in-law in 1984.

FINDINGS OF THE COMMISSIONER
The Commissioner concluded evidence did not support any of Krasnoff's assertions and found none of Krasnoff's testimony to be worthy of credibility. The Commissioner found Krasnoff did settle Mr. Bellanger's case without the knowledge of Mr. Bellanger. He then deposited the settlement funds in his general account. These funds were never withdrawn for the benefit of Mr. Bellanger. Likewise, they were never put in an escrow account or actually delivered to him.
The Commissioner concluded Sanford Krasnoff violated DR 9-102 and DR 1-102(A): (1) by failing to notify his client of settlement, (2) by failing to deposit funds belonging to his client in a client's trust account, and (3) by failing to deliver to his client the funds to which the client was entitled. Accordingly, the Commissioner recommended disbarment.
Krasnoff filed an opposition to the Commissioner's findings of fact, conclusions of law, and recommendation of discipline. This matter was set for oral argument on January 12, 1987. Krasnoff, while reserving the right to argue before the court, did not appear.

DISCIPLINARY ACTION
Normally the purposes of a disciplinary proceeding are to evaluate the character of a lawyer, in the light of his conduct and background, to determine if he is morally fit to continue the practice of law, and to remove him if he is unable or likely to be unable to discharge his professional duties; or if the lawyer is reformable, to impose a suspension or other sanction to correct and deter the errant attorney, deter other lawyers from similar misconduct, and recompense for the damage done to the legal profession and the administration of justice. La. State Bar Ass'n v. Hinrichs, 486 So.2d 116 (La.1986).
A review of all the evidence leads to the inescapable conclusion that respondent violated DR 9-102 and DR 1-102(A) as specified by the Commissioner. Under the guidelines laid down in Hinrichs, we conclude Krasnoff's misconduct would be sufficient to warrant disbarment. We find he acted in bad faith in his representation of *1023 his client by pursuing a consistent course of fraudulent conduct which resulted in the intentional deprivation of settlement funds from his client for a period in excess of five years. However, this matter comes to us for decision after the respondent has already been disbarred for similar misconduct in an earlier proceeding. We therefore must determine what appropriate disciplinary actions are still available.
Article XV, § 12(a) of the Articles of Incorporation of the Louisiana State Bar Association provides:
A minimum of five (5) years must elapse following disbarment before the disbarred attorney may apply for reinstatement. (Emphasis added.)
Clearly the provision requires a mandatory minimum period of five years before a disbarred attorney may petition for reinstatement. As this is only a minimum requirement, we are free to extend such period as appears appropriate in the circumstances. After carefully considering the options available, and the suggestions made by the Committee on Professional Responsibility, we conclude the proper disciplinary penalty to be assessed against Respondent is an extension of the minimum five year period which must expire before he may apply for reinstatement to the practice of law.
Respondent's disbarment was ordered on May 20, 1986, in Krasnoff, supra. This judgment became final on September 4, 1986. Respondent would ordinarily be permitted to petition the court for reinstatement following September 4, 1991. However, as a penalty for respondent's additional misconduct which is the subject matter of this proceeding, it is appropriate that he not be allowed to petition this court for reinstatement until five years have elapsed from the finality of this judgment.
Article XV, § 12 also provides:
(b) The mere passage of time without incident is considered inadequate to warrant reinstatment. Reinstatement may be granted only after the disbarred attorney has met the following requirements and has filed a petition for reinstatement in accordance with provisions of sub-paragraph (c) of this section:
(1) On the strong affirmative showing by the applicant in support of his application to be restored to practice that he now possesses good moral character.
(2) Additionally, the disbarred attorney shall negate the likelihood of possible future misconduct and shall show that he is now a fit person to be readmitted to the practice of law, notwithstanding his previous disciplinary action.
This provision allows us the latitude to make specific requirements of a disbarred attorney which he must fulfill prior to petitioning for reinstatement.

DECREE
For the foregoing reasons, it is ordered, adjudged and decreed that Sanford Krasnoff is prohibited from petitioning this court for reinstatement until five years have elapsed from the finality of this judgment.
It is further ordered, adjudged and decreed that consideration of any such petition is conditioned upon prior restitution being made to complainant, Thomas Earl Bellanger.
PERIOD FOR REINSTATEMENT APPLICATION EXTENDED.
CONSIDERATION OF REINSTATEMENT CONDITIONED UPON PRIOR RESTITUTION.
NOTES
[1] DR 9-102. Preserving Identity of Funds and Property of a Client

A. All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank or insured depository institution accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
1. Funds reasonably sufficient to pay bank charges may be deposited therein.
2. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
B. A lawyer shall:
1. Promptly notify a client of the receipt of his funds, securities or other properties.
2. Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
3. Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
4. Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
DR 1-102. Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.