DISCIPLINARY PROCEEDINGS
WATSON, Justice.*
This is a disciplinary proceeding brought by the Louisiana State Bar Association against one of its members, Robert P. Cha-telain, who is charged with five specifications of misconduct. The Louisiana Supreme Court has original jurisdiction.[1]
It is alleged that Chatelain commingled and converted the funds of his clients in five separate matters, that he neglected legal matters entrusted to him, that he engaged in conduct involving fraud, deceit or misrepresentation, that he committed a criminal act reflecting adversely on his honesty, trustworthiness and fitness as a lawyer, and that he engaged in conduct prejudicial to the administration of justice. If proven, the allegations constitute violations of Disciplinary Rules 1-102(A)(3), (4), (5) and (6), 6-101(A)(3), 9-102(A) and (B) of the Louisiana State Bar Association Code of Professional Responsibility, and violations of Rules 1.15 and 8.4(a), (b), (c) and (d) of the Supreme Court of Louisiana’s Rules of Professional Conduct.[2]
PROCEEDINGS BELOW
On July 21, 1987 the Committee on Professional Responsibility held a formal investigatory hearing on the first two specifications. Robert Chatelain admitted the allegations contained in the first specification of misconduct, noting that restitution had been made; he contested the allegations contained in the second specification. On October 26, 1987 a formal investigatory hearing was held on the issues contained in the third specification of error; Chatelain did not attend. He also failed to attend the formal hearing held on May 4, 1988, when testimony was taken concerning the fourth and fifth specifications of misconduct.
At the Commissioner’s hearings on June 27 and November 22, 1988, Chatelain objected to introduction of the transcripts of the investigatory hearings. He contended that the transcripts and exhibits violated his right to confront his accusers, and that the Commissioner should take new evidence and require new testimony rather than relying wholly on the arguments and evidence made at the investigatory hear *1002 ings. This objection was considered and rejected in Louisiana State Bar Association v. Levy, 292 So.2d 492 (La.1974), and has no merit.[3]
The Commissioner found Chatelain guilty of all the allegations of misconduct except those contained in specification #2, and recommended disbarment as the appropriate penalty. Since Chatelain stands disbarred for similar offenses [4], the Commissioner recommended that Chatelain be ineligible to apply for readmission until five years from the finality of this judgment.[5]
Chatelain has not offered a defense to the allegations in the third, fourth and fifth specifications of misconduct. He did not file a brief and did not appear at oral argument before this Court: the Bar Association submitted the matter on its record and brief.
FACTS AND EVIDENCE
Specification One: Chatelain was retained to handle a sale of immovable property by Margery and Matthew Sanders to the Fred M. Erichson Company, Inc. The property was encumbered with paving, sewerage and water liens, which Chatelain agreed to satisfy from the proceeds of the sale. He further agreed to pay the premium on a title insurance policy on behalf of the buyer, the Erichson Company. Chate-lain failed to pay the liens and failed to purchase the title insurance until over a year had passed, waiting until the Erichson Company had paid the liens and the premium and filed a complaint with the Bar Association in an effort to be repaid. The amount of money involved was $1,161.05. Chatelain stipulated that these facts were correct, and that restitution had been made. Chatelain said that he accepted full responsibility for the “error”, claiming that he “just forgot” to pay the liens and the premium. The Commissioner correctly found that Chatelain had violated DR 1-102(A)(4) and (6)[6] and DR 9-102(B)[7] of the Code of Professional Responsibility and Rules 1.15[8] and 8.4(a) and (c) of the Rules *1003 of Professional Conduct[9].
Specification Two: Chatelain was entrusted with $50,153.21 belonging to Raymond and Nancy Mix. The Mixes claim that Chatelain was authorized to spend only about half the amount he received, and cannot account for the remainder. Chatelain disputes this, stating that the Mixes frequently gave him verbal authorization to cash checks and he either gave them the cash or disbursed it according to their instructions.
At the formal investigatory hearing, Raymond Mix produced accounting summaries prepared by his wife which purport to show that there should be at least a balance of $23,555.21 in their account with Chatelain. Mix admitted that he and Nancy sometimes gave verbal approval to Cha-telain to spend the money, and he was evasive about the bill for attorney’s fees which Chatelain claims was partially satisfied from the account. The Mixes’ current attorney, Joseph Marcal, testified that he was present at Chatelain’s office in 1985 when the Mixes confronted Chatelain about their account. Marcal testified that Chate-lain was unable to produce a written record of the funds, but verbally accounted for “about half” the money.
Chatelain called several witnesses, including an accountant, Wade Webster, who analyzed the Mix funds, using Chatelain’s records. After Chatelain handled various legal concerns for the Mixes, Webster found a balance of $3,561.52, which was absorbed by Chatelain’s legal fees.
The Commissioner found the evidence conflicting and several of the witnesses less than wholly credible. The Mixes’ apparent motivation for depositing funds with Chatelain in the first place was to avoid seizure of those funds while they defended a civil RICO suit. Several of the witnesses are parties in other litigation involving the Mixes, who have a civil suit against Chate-lain as well. The Commissioner found that the only violation proven was Chatelain’s failure to maintain complete records of a client’s accounts. The brief filed by the Bar Association concurs in this finding. Chatelain’s failure to maintain adequate records of these clients’ accounts constitutes a violation of Rule 9-102(B)(3) or Rule 1.15(a). This deficiency makes it impossible to determine the truth of the associated allegations.
Specification Three: Chatelain acted as both the closing notary and agent for the title company in an act of sale of immovable property. Chatelain retained $43,-048.94 from the proceeds of the sale to pay off a first mortgage on the property. He failed to do so, yet he wrote a title policy which did not show the outstanding mortgage. When the mortgagee went against the vendor, the latter produced a closing statement showing that the amount of the indebtedness had been withheld. The title company had to pay the amount of the first mortgage on the basis of the title policy; they threatened legal action, and Chatelain eventually reimbursed them in full.
The sale was closed on July 12,1985, and the title insurance company paid the mortgage on April 18,1986. Since Chatelain did not complete restitution until April 22, 1987, he had the use of the funds for almost two years. Chatelain made no defense to this allegation; he stated in a letter to the Bar Association that the error was his and he accepted full responsibility for it. The Commissioner correctly found that the misconduct alleged in this specification was amply proven by the testimony and the documentary evidence, and constituted a violation of DR 1-102(A)(4), (5) and (6) and Rules 1.15(a) and (b) and 8.4(a), (c) and (d).
Specification Four: Chatelain represented James Pino in some domestic litigation; a consent judgment filed on September 8, *1004 1986 ordered that Pino make his child support payments through Chatelain. Donna Pino testified that she received three checks from Chatelain which were drawn on a closed account. The checks were issued beginning in May of 1987, and restitution was not made until October 15, 1987, the day before a court hearing on Mrs. Pino’s Rule for Contempt. The total amount of money involved was $1500.00. Chatelain did not defend or explain his actions. The Commissioner found that Cha-telain knowingly issued worthless checks and failed to make them good immediately, in violation of DR 1-102(A)(4), (5) and (6) and Rules 8.4(b), (c) and (d). This finding is supported by the record.
Specification Five: Chatelain represented William Corliss, purportedly an heir of Russell Sparkman, whose widow, Muriel Fischer Sparkman, died shortly after her husband. Mr. Corliss was appointed administrator of the two estates, which Cha-telain then had consolidated. Clifford de-Laup, the attorney for James McDowell, an heir of the Sparkman estates, testified at the formal investigatory hearing held May 4, 1988 that he made repeated requests of Chatelain that he complete the succession inventory. When these requests were met with evasions, deLaup finally brought a rule to produce the inventory or have Cha-telain dismissed as the attorney for the Sparkman succession. Chatelain delayed for a time, and then refused to tell deLaup or the trial judge where the monies from the succession were. The documents produced by deLaup indicate that Chatelain systematically depleted the succession of over $246,000 in the space of a few months. Monies from the succession were withdrawn from the Sparkmans' accounts, deposited in Chatelain’s personal account and later withdrawn by Chatelain.
Restitution has not been made. Chate-lain signed a collateral mortgage for $300,-000, but, according to deLaup, the properties were so heavily encumbered with superior liens and judgments that there was little or no equity value.[10] deLaup stated that Chatelain also promised that “a big oil deal” he was working on would produce enough to repay the succession, but that has not materialized.
The Commissioner found that the testimony and evidence clearly supported the allegations in this specification of misconduct. The record demonstrates that Chate-lain is guilty of a serious violation of DR 1-102(A) and DR 9-102(A)[11] and (B) and of Rules 1.15 and 8.4(a), (b), (c) and (d).
LAW AND DISCIPLINARY ACTION
Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.1986), enunciates guidelines for determining appropriate disciplinary sanctions in cases involving an attorney’s conversion of a client’s money. The evidence in this case reviewed in the light of those guidelines compels the conclusion that Chatelain should be disbarred for his actions. The Commissioner’s Report noted that every aggravating circumstance listed in Hinrichs applied to Chate-lain. The evidence is overwhelming that Chatelain acted in bad faith, that he intended a result inconsistent with his clients’ interests, and that he committed fraudulent acts in connection with the violations. The amount of the deprivation was sizeable and the duration was lengthy, the damage and *1005 risk of damage to his clients was great, and he has failed to make restitution in one instance, and in the others done so only under the pressure of threatened legal proceedings.[12]
In Louisiana State Bar Association v. Krasnoff, 502 So.2d 1018 (La.1987), this Court considered charges against an attorney who had been previously disbarred in a separate proceeding. That case held that it was appropriate to extend the minimum five-year waiting period which must elapse before a disbarred attorney can request reinstatement in order to reflect the adjudication of subsequent charges. That remedy is also appropriate here. The mandatory five-year delay will commence with the finality of the judgment in this case.
DECREE
For the foregoing reasons, it is ordered, adjudged and decreed that Robert P. Cha-telain be prohibited from petitioning this Court for reinstatement until five years have elapsed from the finality of this judgment.
It is further ordered, adjudged and decreed that consideration of any such petition be conditioned upon restitution being made to the Sparkman successions.
PERIOD FOR REINSTATEMENT APPLICATION EXTENDED. CONSIDERATION OF REINSTATEMENT CONDITIONED UPON PRIOR RESTITUTION.

 Associate Justice HARRY T. LEMMON did not sit; Judge PIKE HALL, JR. Chief Judge of the Court of Appeal, Second Circuit, participated as Associate Justice pro tempore.

. LSA-Const. 1974, Art. 5, § 5(B).

. Chatelain’s alleged acts of misconduct began in April of 1985. Since restitution has not been made in one case, his actions may be deemed continuing through the present. Several of the allegations of misconduct concern acts which took place in 1987. His actions are therefore covered by both the Disciplinary Rules of the Code of Professional Responsibility of the Louisiana State Bar Association, and the Rules of Professional Conduct of the Supreme Court, which became effective on January 1, 1987. Chatelain was previously disbarred for activities which commenced in October of 1985. See Louisiana State Bar Association v. Chatelain, 513 So.2d 1178 (La.1987). That disbarment became final on December 10, 1987.

. See additional cases cited therein at 494.

. Louisiana State Bar Association v. Chatelain, 513 So.2d 1178 (La.1987). The acts of misconduct in question in this case occurred while Chatelain was still a member of the bar.

. Citing Louisiana State Bar Association v. Kras-noff, 502 So.2d 1018 (La.1987).

. Rule 1-102(A)(4) and (6) of the Code of Professional Responsibility provides:
(A) A lawyer shall not:
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

. Rule 9-102(B) of the Code of Professional Responsibility provides:
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

.Rule 1.15 of the Rules of Professional Conduct provides:
(a) A lawyer shall hold property of clients or third persons that is in a lawyer’s possession in connection with a representation separate from the lawyer’s own property. Funds shall be kept in a separate account maintained in a bank or similar institution in the state where the lawyer’s office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, *1003 the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

. Rule 8.4(a) and (c) of the Rules of Professional Conduct provides:
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

. Chatelain apparently made a similar offer to the title company injured by his misconduct in Specification Three. The attorney for the title company advised his client that a check of the records in three parishes showed five mortgages, a lis pendens, tax liens, and a judgment of 158,505.

. Rule 9-102(A) of the Code of Professional Responsibility provides:
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

. Hinrichs notes that one or more of these elements are usually present in a typical case of disbarment for violation of the rules against commingling and conversion. 486 So.2d at 122.