791 So.2d 602 (2001)
In re Charles H. WHITE.
No. 2000-B-2732.
Supreme Court of Louisiana.
April 25, 2001.
Charles B. Plattsmier, Bernadine Johnson, Baton Rouge, Counsel for Applicant.
Charles H. White, New Orleans, Counsel for Respondent.
PER CURIAM.[*]
This disciplinary proceeding arises from four counts of misconduct filed by the Office of Disciplinary Counsel ("ODC") against respondent, Charles H. White, a currently disbarred attorney.[1]

UNDERLYING FACTS

Count I
In 1996, respondent represented Jerome Matthews in federal litigation pending in the United States District Court for the Middle District of Louisiana. In April of 1996, respondent accepted a check from *603 his client's sister, Joyce Juge, in the amount of $2,200 as payment of Mr. Matthews' litigation expenses. On April 23, 1996, the United States Court of Appeals for the Fifth Circuit suspended respondent from practicing in all district courts within its jurisdiction, which includes the Middle District of Louisiana.[2] Without prior notice to his client, respondent withdrew from Mr. Matthews' case.
During the investigation of the misconduct, respondent intentionally misrepresented in a sworn statement before the ODC that he had already refunded the unused retainer. In fact, the unused funds in the amount of $1,200 were not refunded until seven weeks later. Respondent failed to provide an accounting for the funds.

Count II
In late March of 1996, respondent settled a personal injury case on behalf of his client, Bennie Scott. Although respondent withheld $2,671.30 in settlement funds to pay his client's bills for emergency medical and hospital services, he failed to disburse the funds.

Count III
Respondent's daughter, Thadra White, is a licensed attorney. In December of 1997, Donna Bass Hobson retained the services of Ms. White in connection with a succession matter. During this time, Ms. White was frequently inaccessible or unavailable to Ms. Hobson and respondent, who was suspended from the practice of law,[3] began returning telephone calls for his daughter. Thereafter, respondent met with Ms. Hobson in his former law offices, gave her legal advice, prepared pleadings and spoke with witnesses.
Subsequently, respondent persuaded Ms. Hobson to terminate his daughter's services and obtain the services of his former law associate, Rodney Braxton. In doing so, he misrepresented to Ms. Hobson that he was Mr. Braxton's "senior attorney." Moreover, while he advised Ms. Hobson that he was suspended from the practice of law until October of 1998, he failed to advise her that he was subsequently disbarred.

Count IV
On July 28, 1997, Deromy Quarles retained respondent to handle a personal injury case. Respondent communicated last with his client on September 11, 1997. Thereafter, respondent failed to return Mr. Quarles' telephone calls and closed his law office without notice.
Respondent failed to cooperate with the ODC in the investigations of three of the matters by failing to accept notices of the complaints and requests for information.

DISCIPLINARY PROCEEDINGS
After investigation, the ODC filed formal charges against respondent, alleging his conduct violated Rule 1.1(a) (incompetence), Rule 1.3 (lack of diligence), Rule 1.4 (failure to communicate), Rule 1.5 (failure to refund unearned fees), Rule 1.15(b) (failure to pay fees owed to a third party), Rule 1.16(a) (failure to properly withdraw from representation upon termination), Rule 1.16(d) (failure to protect client interests upon termination of representation), Rule 5.5 (engaging in the unauthorized practice of law), Rule 8.1(b) (failure to *604 respond to a lawful demand for information from a disciplinary authority), Rule 8.1(c) (failure to cooperate with the ODC in its investigation), Rule 8.4(a) (violating the Rules of Professional Conduct), Rule 8.4(b) (commission of a criminal act adversely reflecting on a lawyer's honesty, trustworthiness, or fitness as a lawyer), Rule 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation), Rule 8.4(d) (conduct prejudicial to the administration of justice), and Rule 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct. Respondent failed to file an answer to the complaint, and the hearing was conducted on documentary evidence only. While the ODC submitted evidence and a pre-hearing memorandum seeking disbarment, respondent failed to make any filing.

Hearing Committee Recommendation
The hearing committee determined the allegations against respondent are serious enough to merit disbarment. Noting respondent is currently disbarred from the practice of law, the committee recommended respondent be disbarred again and that he not be eligible to seek reinstatement until five years from the order imposed in this matter. The committee also recommended respondent make restitution to Mr. Scott.

Disciplinary Board Recommendation
The disciplinary board found that respondent breached duties owed to his clients, the public, and the profession, and that his conduct was intentional, resulting in actual harm when he failed to distribute the funds owed to Mr. Scott's medical providers. It further concluded his conduct caused serious potential harm when he closed his office without notice and failed to advise his clients of his suspension and disbarment. The board recognized the presence of several aggravating factors: prior disciplinary offenses,[4] substantial experience in the practice of law (admitted 1967), multiple offenses involving dishonesty and misrepresentations, bad faith obstruction of disciplinary proceedings by failing to comply with rules or orders of a disciplinary agency, submission of false statements and refusal to acknowledge the wrongful nature of the conduct. It found no mitigating factors.
Thus, the board concluded the appropriate sanction is disbarment. Recognizing that respondent is currently disbarred, it recommended that the minimum period for respondent to seek readmission be extended, *605 and that respondent be ordered to make restitution to Mr. Scott.
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board. However, on our own motion, we set the matter for oral argument, requesting that the parties specifically address "the duration of the sanction appropriate for an attorney, who is presently disbarred." The ODC filed a brief and participated in oral argument. Respondent, whose whereabouts are apparently unknown, did not file a brief, nor did he appear for oral argument.

DISCUSSION
The record demonstrates respondent failed to disburse and account for client funds, failed to communicate with a client, and practiced law after being suspended by this court. Additionally, respondent failed to cooperate with the ODC in its investigation of these matters, and has made no effort to participate in these proceedings.
In making a determination of the appropriate sanction for respondent's misconduct, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass'n v. Guidry, 571 So.2d 161 (La.1990).
Respondent's misconduct is clearly serious in nature. In the Matthews matter, respondent made false and misleading statements to the ODC regarding the refund of his client's unearned fees, and deprived the client of these funds for a significant period of time. He withheld over $2,600 in settlement funds for medical expenses in the Scott matter, but failed to disburse these funds to the health care providers, causing harm to both his client and third parties. In the Hobson matter, respondent failed to promptly advise his client of his suspension and subsequent disbarment, and sought to mislead her into believing that he was eligible to practice law. Respondent completely abandoned his client in the Quarles matter by failing to return his client's telephone calls and closing his law office without notice. Finally, respondent has completely failed to cooperate in the ODC's investigation of this matter or in any disciplinary proceedings in this case.
Significant aggravating factors are present, including respondent's lengthy disciplinary record, his substantial experience in the practice of law, and the presence of multiple offenses. The disciplinary board did not identify any mitigating factors, and we are unable to discern any from the record.
Based on the seriousness of respondent's misconduct, the presence of significant aggravating factors, and the lack of any mitigating facts, we conclude the appropriate sanction under the facts of this case is disbarment. Because respondent is already disbarred, we now turn to a discussion of the duration of the sanction to be imposed under these circumstances.
Supreme Court Rule XIX, § 24(A) provides that "[n]o lawyer may petition for readmission until five years after the effective date of disbarment." However, that rule is silent with regard to lawyers who are disbarred subsequent to a prior disbarment.
We first addressed the issue of multiple disbarments in Louisiana State Bar Ass'n v. Krasnoff, 502 So.2d 1018 (La.1987). Although the case arose under now-repealed Article XV of the Articles of Incorporation of the Louisiana State Bar Association, that article, like Supreme Court Rule XIX, § 24, provided a minimum period of five *606 years before a disbarred attorney could seek readmission. After reviewing this provision, the court stated:
Clearly the provision requires a mandatory minimum period of five years before a disbarred attorney may petition for reinstatement. As this is only a minimum requirement, we are free to extend such period as appears appropriate in the circumstances. After carefully considering the options available, and the suggestions made by the Committee on Professional Responsibility, we conclude the proper disciplinary penalty to be assessed against Respondent is an extension of the minimum five year period which must expire before he may apply for reinstatement to the practice of law.
Respondent's disbarment was ordered on May 20, 1986, in Krasnoff, supra. This judgment became final on September 4, 1986. Respondent would ordinarily be permitted to petition the court for reinstatement following September 4, 1991. However, as a penalty for respondent's additional misconduct which is the subject matter of this proceeding, it is appropriate that he not be allowed to petition this court for reinstatement until five years have elapsed from the finality of this judgment.
502 So.2d at 1023.
Under Krasnoff, we recognized we had the inherent power to extend the minimum period for readmission as appropriate under the circumstances. Applying this reasoning, we chose in that case to extend the minimum period for readmission for five years from the date of our judgment, rather than making the five-year minimum readmission period from that disbarment run consecutively to the five-year period remaining from the earlier disbarment. We have generally followed the Krasnoff approach in subsequent cases. See, e.g., In re: Welcker, 99-3239 (La.1/14/00), 753 So.2d 177; In re: Quaid, 98-2089 (La.9/3/99), 740 So.2d 104; In re: Gros, 97-1295 (La.9/24/97), 699 So.2d 384.[5]
Nonetheless, under certain circumstances, application of the Krasnoff approach may frustrate the purposes behind the rule setting a minimum period for readmission. In situations where the subsequent disbarment is entered relatively soon after the original disbarment, the cumulative effect of the second disbarment may be to extend the minimum period for readmission for only a year or two beyond the five-year period stemming from the original disbarment.[6]
Clearly, disbarment is the most severe sanction a court may impose in a disciplinary proceeding. In order to ensure that disbarment is in reality a more severe sanction than suspension, in no *607 event should a lawyer be considered for readmission until at least five years after the effective date of disbarment. Commentary, American Bar Association Standards for Imposing Lawyer Sanctions, § 2.2 (1991). Therefore, we believe it is more consistent with the purposes of Supreme Court Rule XIX, § 24 to hold that the five-year minimum period for readmission for a subsequent disbarment should run consecutively to the five-year period stemming from the original disbarment, in the absence of unusual or extenuating circumstances. Of course, we emphasize that completing the minimum period for readmission merely gives an attorney the right to apply for readmission and in no way suggests that the attorney will be readmitted. Such a determination remains in the sound discretion of this court.
Accordingly, we now hold that the minimum five-year period for applying for readmission from the disbarment imposed in this case will not commence until five years have expired from the effective date of respondent's prior disbarment in In re: White, 97-2731 (La.2/6/98), 706 So.2d 964. Additionally, we will order respondent to make restitution to his client, Bennie Scott, for undisbursed funds from his settlement.

DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is the decision of this court that respondent be disbarred from the practice of law in the State of Louisiana. Because respondent is already disbarred, it is ordered that the minimum five-year period for applying for readmission from the disbarment imposed in this case will not commence until five years have expired from the effective date of respondent's prior disbarment in In re: White, 97-2731 (La.2/6/98), 706 So.2d 964. Respondent is ordered to make restitution to Bennie Scott for undisbursed settlement funds. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of the finality of this court's judgment until paid.
NOTES
[*] Philip C. Ciaccio, Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.
[1] Respondent's current disbarment stems from conduct similar to that alleged in the instant matter. In re: White, 97-2731 (La.2/6/98), 706 So.2d 964.
[2] For the background facts of this suspension, see In re: White, 97-1152 (La.9/19/97), 699 So.2d 375.
[3] On September 19, 1997, this court issued an order suspending respondent from the practice of law for a period of one year, followed by a two-year period of supervised probation. In re: White, 97-1152 (La.9/19/97), 699 So.2d 375. That order became final on November 21, 1997, when we denied rehearing.
[4] The respondent's prior disciplinary record includes:
1. 2/6/98-current Disbarment Neglect of legal matters, failure to communicate,
 charging excessive fees, and commingling and
 conversion of client funds. In re: White, 97-2731
 (La.2/6/98), 706 So.2d 964;
2. 9/19/97 One-year suspension Failure to file a timely brief, failure to comply with
 court orders, and failure to cooperate with ODC.
 In re: White, 97-1152 (La.9/19/97), 699 So.2d
 375;
3. 10/26/95 Admonition Incompetence, neglect of legal matters, and failure
 to communicate (95-ADB-105);
4. 5/23/94 Admonition Failure to cooperate and failure to respond to a
 disciplinary complaint (93-ADB-058);
5. 2/13/89 Ninety-day suspension Improper handling of client funds. Louisiana State
 Bar Ass'n v. White, 538 So.2d 256 (La.1989);
6. 1985 Formal private reprimand Improper handling of client settlement funds
 (# 6824-A); and
7. 1985 Formal private reprimand Improper handling of client settlement funds.
 (# 7214).

[5] In Louisiana State Bar Ass'n v. Chatelain, 573 So.2d 470 (La.1991), we departed from Krasnoff and declined to extend the delay for applying for readmission in a case involving an attorney who had been disciplined on two prior occasions, resulting in a disbarment and an extension of the minimum period for applying for readmission. In so doing, we reasoned that it was generally inappropriate to disbar a previously disbarred attorney when the violations occurred before or concurrently with the violations which resulted in the initial disbarment. Chatelain is distinguishable from the instant case, because the charges forming the basis of the current disciplinary proceeding occurred after respondent's prior disbarment.
[6] For example, in Krasnoff, the lawyer's original disbarment was entered in 1986, so that he would have been eligible to seek readmission in 1991. The judgment extending the readmission period was rendered in 1987, making him eligible to seek readmission in 1992. Thus, the net effect in Krasnoff was that the respondent's minimum period for readmission was extended by one year.