ATTORNEY DISCIPLINARY PROCEEDINGS
1PER CURIAM.
This disciplinary matter arises from five counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Nicholas Sebastian Morphis, an attorney licensed to practice law in Louisiana, but currently on interim suspension. For the reasons that follow, we conclude respondent’s misconduct is egregious and warrants the sanction of permanent disbarment.
UNDERLYING FACTS
Respondent was admitted to the practice of law in 1992. The misconduct that forms the basis of these charges began shortly after his admission.
Between December 31, 1995 through June 30, 1997, respondent represented approximately 345 clients. During this time, he engaged in an ongoing pattern of commingling and converting these clients’ funds to his own use.
Specifically, later investigation of respondent’s financial records revealed that on December 31, 1995, respondent’s client trust account contained the sum of $182,638. The ODC’s audit revealed it should have contained the sum of $334,388 in clients’ funds entrusted to respondent. The resulting shortfall of $151,750 represents clients’ funds which respondent commingled and converted to his own use. The shortfall grew larger by June 30,1997, when respondent’s client trust account contained the sum of $73,386. The ODC’s audit revealed it should have contained the sum of $864,399 in clients’ funds entrusted to respondent, a shortfall of $791,013.
*936 Un addition, beginning prior to January 1, 1996 and continuing through (and perhaps beyond) June 30, 1997, respondent engaged in a systematic pattern of fraud and deceit which involved the “double dipping” of expenses and loans in the account-ings rendered to clients when their cases settled. In essence, respondent borrowed funds or extended credit to pay client expenses, as evidenced by documents executed by respondent, his staff, and/or the client. However, at the conclusion of the case, respondent would deduct from the client’s portion of the settlement both the funds borrowed or extended on credit and the bills and expenses which were previously paid by the borrowed funds and credit extensions. Thus, respondent effectively required the client to pay for expenses twice.
The record further reveals that between January 1996 and June 1997, respondent negotiated settlements on behalf of his clients without his clients’ knowledge or consent. Respondent received settlement checks in these cases totaling $169,850.60, which he commingled and converted to his own use.
There is also evidence in the record that on March 7, 1996, respondent deposited a $94,000 check into his trust account on behalf of his client, George Ragas. The following day, respondent withdrew $45,358.53 by check payable to himself. There is no evidence Mr. Ragas received any of these funds.
Because respondent’s financial records are incomplete, it was impossible for the ODC to precisely detail the extent and magnitude of his misconduct. However, there is a strong possibility his misconduct may involve more victims than the 345 clients identified so far, and may involve conversion of funds totaling $2,591,683.99.
I ¡¡DISCIPLINARY PROCEEDINGS

Motion for Interim Suspension

In 1997, after the ODC first determined respondent was mishandling large amounts of client funds, it filed a motion with this court seeking to place respondent on immediate interim suspension for threat of harm. Respondent initially objected to an interim suspension, but later withdrew his opposition and filed a concurrence in the ODC’s motion.[1] On November 14, 1997, this court ordered that respondent be placed on interim suspension. In re: Morphis, 97-2515 (La.11/14/97), 701 So.2d 1324.

Formal Charges

In 1999, following the completion of its investigation, including an extensive audit of respondent’s financial accounts, the ODC filed five counts of formal charges against respondent. The ODC alleged respondent’s conduct constitutes a violation of Rules 1.3 (failure to act with diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.15 (safekeeping property of clients or third persons), 3.4(a) (unlawful obstruction of another party’s access to evidence), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, *937 fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.
| ¿Respondent failed to answer or otherwise respond to the formal charges. Accordingly, no formal hearing was held, and the matter was submitted to the hearing committee solely on documentary evidence. See Supreme Court Rule XIX, § 11(E)(3).
The ODC urged in its submission that respondent be disbarred, and attached documentary evidence in support, including (1) the audit report of Raymond La-douceur, JD/CPA, and its attached exhibits, (2) a copy of the ODC’s motion for interim suspension filed in this court, and its attached exhibits, (3) a copy of this court’s order granting the interim suspension, (4) numerous complaints filed against respondent by his clients, third-party providers, and other attorneys, and (5) numerous sworn statements taken in the course of the ODC’s investigation. In all, the ODC introduced 58 exhibits. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Recommendation

After reviewing the evidence submitted by the ODC, the hearing committee concluded that respondent violated the professional rules as charged. In particular, the committee found that respondent violated Rules 1.3 and 1.4 by failing to inform his clients that settlements had been reached in their cases and settlement funds had been received, and by failing to account for or disburse the settlement funds; violated Rules 1.5, 1.15, 8.4(a), 8.4(b), 8.4(c), and 8.4(d) by engaging in the deliberate and ongoing theft of approximately $2.5 million in clients’ funds; and violated Rules 3.4(a) and 8.4(g) by failing to maintain the requisite financial records and by failing to cooperate with the ODC in determining the receipt and distribution of clients’ funds. The committee determined the baseline sanction for this misconduct is disbarment. In light of the aggravating factors present (dishonest or selfish motive, pattern of | ^misconduct, multiple offenses, failure to cooperate with and obstruction of the disciplinary process, and refusal to acknowledge the wrongful nature of the misconduct) and the absence of mitigating factors, the committee concluded there is no reason to deviate from the baseline sanction. Accordingly, the committee recommended that respondent be disbarred from the practice of law.[2]
Neither respondent nor the ODC filed a timely objection to the hearing committee’s recommendation.[3]

*938
Disciplinary Board Recommendation

In its report, the disciplinary board found the hearing committee’s findings of fact are not manifestly erroneous, and that the committee correctly applied the Rules of Professional Conduct. The disciplinary board found that respondent’s actions were intentional and knowing and caused actual injury to his clients, the public, and the profession. The board adopted the aggravating factors cited by the hearing committee, and agreed that the record does not support the presence of any mitigating factors. Considering the ABA’s Standards for Imposing Lawyer Sanctions and this court’s Isprior jurisprudence dealing with similar misconduct, the board found disbarment is the appropriate sanction in this case. The board also adopted the hearing committee’s recommendation that respondent be ordered to retain a CPA acceptable to the ODC to conduct an investigation and determine the precise amount of restitution due to others because of respondent’s misconduct, and to make payment of full restitution to these victims. Finally, the board recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
The disciplinary board’s recommendation was filed in this court on October 18, 2001. Although neither respondent nor the ODC objected to the disciplinary board’s recommendation, this court, on its own motion, ordered the case docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(a). The court’s order specifically directed the parties “to address whether the sanction of permanent disbarment pursuant to Supreme Court Rule XIX, Sections 10(a) and 24, as amended August 1, 2001, is appropriate under the facts of this case.” Respondent filed an extensive brief in this court and participated in oral argument.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992).
The undisputed evidence in this case reveals respondent has violated numerous provisions of the Rules of Professional Conduct. The most serious violation is respondent’s blatant conversion of vast sums of clients’ funds. During oral argument |7before this court, respondent candidly admitted that he did not properly segregate his clients’ funds and used funds belonging to one client to pay another, always hoping for the next big settlement which he believed would balance out his accounts. Unfortunately for respondent’s clients, when this game of “musical chairs” stopped, the clients were left holding losses which may total into the millions of dollars.
*939 In light of this clear misconduct, we now turn to a discussion of the appropriate sanction. In Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116, 119 (La.1986), we set forth the purpose behind disciplinary proceedings:
The purposes of a disciplinary proceeding are to evaluate the character of a lawyer, in the light of his conduct and background, to determine whether he is morahy fit to continue in the practice of the law; and to remove him from the profession if he is unable or likely to be unable to discharge his professional duties; or, if the lawyer is reformable, to impose a suspension or other sanction to correct and deter the errant attorney, deter other lawyers from similar misconduct, and recompense for the damage done to the legal profession and the administration of justice.
Hinrichs went on to explain the typical elements which are found in a case of disbarment based on conversion of client funds:
[T]he lawyer acts in bad faith and intends a result inconsistent with his chent’s interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
Hinrichs, 486 So.2d at 122.
It is beyond dispute that each of these factors is satisfied in the instant case. Respondent unquestionably acted in bad faith and without regard for his clients’ interests. The duration of the deprivation was extensive, as large numbers of respondent’s clients continue to be deprived of their funds, which they may never | ^receive. The magnitude of the damage caused by respondent to his clients is great, constituting some of the most shocking misconduct this court has ever considered. As a consequence of respondent’s shoddy record-keeping, the true extent of his conversion may never be known, but it appears to be in excess of $2.5 million. While respondent has made some token efforts at restitution, he did not do so until well after these disciplinary proceedings were commenced. Thus, the Hinrichs factors compel a finding that respondent’s conduct warrants the most severe sanction available to us.
When we decided Hinrichs, a disbarred attorney was generally allowed to seek readmission after a period of five years. However, we have recognized that a disbarred attorney has no absolute right to seek readmission after five years, and under our plenary constitutional authority to regulate the practice of law, we have extended the minimum period for readmission from disbarment. See In re: White, 00-2732 (La.4/25/01), 791 So.2d 602; Louisiana State Bar Ass’n v. Krasnoff, 502 So.2d 1018 (La.1987).
On August 1, 2001, prior to the filing of the board’s recommendation in this case, we adopted amendments to Supreme Court Rule XIX, § 10 [4] and § 24[5] to pro *940 vide |gfor the sanction of permanent disbarment. In our commentary accompanying the amendment, we stated, in pertinent part:
In the public interest, the Court has amended Louisiana Supreme Court Rule XIX to codify Permanent Disbarment as an available sanction for attorney misconduct. While the Court has always had the discretion to deny an application for readmission after the requisite five (5)-year waiting period after disbarment, an attorney who is permanently disbarred under these circumstances will be prohibited from applying for readmission to the bar. These amendments reflect the judgment of the Court that in some instances lawyer misconduct may be so egregious as to warrant a sanction of permanent disbarment based on the facts of an individual case and in consideration of the guidelines in Appendix E to the Rules of Lawyer Disciplinary Enforcement.
In Appendix E, we set forth several guidelines illustrating the type of cases which might warrant permanent disbarment. We explained that these guidelines were not intended to bind this court in its decisionmaking, but are intended to provide “useful information to the public and to lawyers concerning the types of conduct the Court might consider to be worthy of permanent disbarment.”
Guideline 1 provides that “repeated or multiple instances of intentional conversion of client funds with substantial harm” are a ground for permanent disbarment. Clearly, this guideline fits the instant case.
We do not lightly impose the sanction of permanent disbarment. Nonetheless, we are firmly convinced that we would be remiss in our constitutional duty to regulate the practice of law if we did not impose that sanction here. The extensive record in this case reveals with perfect clarity respondent’s utter lack of regard for the welfare of his clients. His actions lead us to the inescapable conclusion that respondent does not possess the requisite moral fitness to practice law in this state.
“High standards of honesty and righteousness have been erected for those engaged in the legal profession and all members of it are required to take an oath to hnuphold these ideals upon their admission to the' Bar.” Louisiana State Bar Ass’n v. Haylon, 250 La. 651, 198 So.2d 391, 392 (1967). Respondent has disregarded and ignored his obligation to uphold the ideals that he assumed when he took the oath as a member of the bar of this state. He has used his law license not to foster the high standards of the profession, but as a license to steal from the citizens of Louisiana. This court cannot and will not tolerate such conduct. Respondent must be permanently disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the name of Nicholas Sebastian Morphis be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, *941 § 24(A), it is farther ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent consented to relinquish control over his law office operating accounts and all trust accounts and agreed that he would submit to an audit of the accounts by a CPA, at his expense. Respondent also pledged his full cooperation in the ODC's ongoing investigation and in efforts to protect the interests of his clients. Despite his promises, however, respondent has to this day failed to provide complete financial records or pay the cost of the CPA's audit.

. The committee further recommended that prior to making any future application for readmission, respondent “should bear the burden of retaining a Certified Public Accountant acceptable to Disciplinary Counsel to conduct an investigation and determine precise restitution due and owing to each individual victim in addition to that which is clearly determined by ODC's present investigation,” and should be required to establish that he has made full restitution "to each and every victim of his misconduct, whether client, third-party provider, colleague, or employee.”

. Instead, nearly three months after the hearing committee issued its recommendation, respondent filed a pleading in which he asserted for the first time that he had not been properly served with the formal charges and that he was prejudiced by the entry of the "deemed admitted” order. The disciplinary board ultimately concluded that the formal charges were properly served because they were mailed to the primary address shown in the registration statement filed by respondent with the bar association, as required by Supreme Court Rule XIX. The board did conclude, however, that respondent was not properly served with the deemed admitted order. Nevertheless, the board found that respondent should have been aware as early *938 as March 14, 2000, when he received the ODC's submission to the hearing committee on the issue of sanctions, that a deemed admitted order had been issued. Respondent elected to file nothing in the five-month period between his receipt of the ODC's submission and the rendition of the hearing committee’s recommendation. Instead, he waited two more months before he filed any pleadings relating to the deemed admitted order. Under these circumstances, the board refused to set aside the hearing committee's deemed admitted order.

. Supreme Court Rule XIX, § 10(A) was amended to add the highlighted language:
(1) Disbarment by the court. In any order or judgment of the court in which a lawyer is disbarred, the court retains the discretion to permanently disbar the lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law.

. Supreme Court Rule XIX, § 24(A) was amended to add the highlighted language:
A disbarred lawyer or a suspended lawyer who has served a suspension period of *940 more than one year, exclusive of any waivers or periods of deferral, shall be reinstated or readmitted only upon order of the court.... No lawyer may petition for readmission until five years after the effective date of disbarment.... The court retains the discretion, in accordance with Section 10A of this rule, to permanently disbar a lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law.