JjPER CURIAM.*
This attorney disciplinary proceeding arises from eighteen counts of formal charges instituted by the Office of Disciplinary Counsel (“ODC”) against respondent, Jose L. Castro, Jr., a currently disbarred attorney.[1]
UNDERLYING FACTS
Count I: On February 6, 1998, respondent pled guilty to a violation of La.R.S. 37:219, which makes it unlawful to pay money to others for the purpose of obtaining clients. Respondent was convicted of the serious crime of paying at least forty-one runners to bring clients to him. Respondent’s conduct violates Rules 7.2 and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
Count II: On June 7, 1996, the Louisiana Supreme Court suspended respondent’s license to practice law, and eventually disbarred him, due to criminal convictions for four counts of insurance fraud. Respondent pled guilty on February 6, 1998, to the unauthorized practice of law in violation of La.R.S. 37:213. While disbarred, respondent held himself out to be a lawyer in good standing to his clients, and he engaged in the practice of law. Respondent’s conduct violated Rules 5.5 and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
19Pount III: In December of 1994, Reana Gypson was involved in an automobile accident. After the accident, a runner approached Ms. Gypson and improperly solicited her potential legal matter on respondent’s behalf. Due to the solicitation, respondent became her attorney and eventually settled her legal matter in November of 1995. However, despite settling the matter, respondent failed to remit the settlement funds until June of 1996. Respondent’s conduct violated Rules 1.15, 7.2, 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
Count IV: In July of 1996, Maurice Devine was in an automobile accident. Directly after the accident, a runner approached Mr. Devine and improperly solicited his potential legal matter on behalf of respondent. Mr. Devine was taken directly to respondent’s office, where he signed a contract for representation. Respondent improperly solicited professional employ *703 ment. Further, as he had been suspended from the practice of law on June 6, 1996, respondent improperly held himself out to be a lawyer and failed to inform his client that he was ineligible to practice law. Respondent attempted to engage in the unauthorized practice of law. Respondent’s conduct violates Rules 1.1, 1.4, 5.5, 7.2, and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
Count V: On or around December 7, 1994, Jada Marie Ebron, Dorothy Mayberry and Tracey Mayberry were involved in an automobile accident. Ms. Ebron and the Mayberrys were improperly solicited by a runner who was working for respondent. The runner transported Ms. Ebron to respondent’s office, where she signed a contract of representation. Respondent and his partner, Evan Tolchinsky, obtained a settlement on behalf of Ms. Ebron. Thereafter, respondent began representing the Mayberrys and filed suit against his former client, Ms. Ebron, without her authorization. Respondent improperly solicited a client through a runner, and he engaged in representing a position adverse to a former client, resulting in a conflict of interest. Respondent’s conduct violated Rules 1.4, 1.7, 1.9, 5.1, 7.2, and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
Count VI: On or around November of 1995, Tracey Ann Quinn was in a car accident. At the accident scene, a runner improperly solicited Ms. Quinn on respondent’s behalf. Ms. Quinn became | ^respondent’s client. Respondent ultimately settled her claim in October of 1996, when he was ineligible to practice law. Respondent failed to inform his client of this fact, and he engaged in the Unauthorized practice of law, in violation of Rules 1.4, 5.5, 7.2, and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct. Count VII: In July of 1996, Ella Louise Caesar was involved in an automobile accident. At the scene, a runner improperly solicited Ms. Caesar to obtain her potential legal matter for respondent. Ms. Caesar became respondent’s client at the time he was ineligible to practice law due to the interim suspension. Respondent held himself out to be a lawyer in good standing, engaged in the unauthorized practice of law, and he used a runner to improperly solicit a client, all in violation of Rules 1.4, 5.5, 7.2, and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
Count VIII: In March of 1997, Kevin Wilson, Sr., was involved in an automobile accident. At the scene, a runner solicited Mr. Wilson’s potential legal matter on respondent’s behalf. The runner obtained Mr. Wilson’s telephone number and called him the next day, bringing him to respondent’s office. At that time, respondent had been disbarred. However, he held himself out to be a lawyer and engaged in the unauthorized practice of law, in violation of Rules 1.4, 5.5, 7.2, and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
Count IX: In June of 1996, Catherine Marie Clarke and her daughter were involved in an automobile accident. At the scene, a runner offered to take them to the hospital. The runner solicited Ms. Clarke’s legal matter on behalf of respondent, and he took the Clarkes to respondent’s office the next day. At that time, respondent was suspended from the practice of law, but he never informed his clients of his ineligibility to practice. Respondent eventually settled the Clarkes’ case, but the only attorney eligible to practice in the firm was not involved in the settlement. Furthermore, the firm refused to pay the medical expenses it withheld until receiving the complaint from .the ODC. Respondent improperly used a runner to solicit a client, failed to inform clients that he was not eligible to practice law, and failed to supervise office procedures and remit third party funds [4promptly. Respondent’s conduct violated Rules 1.4, 5.1, 5.3, 5.5, 7.2, and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
*704 Count X: On or around April of 1996, Bessie Griffin was involved in an automobile accident. Sometime after the accident, an acquaintance who had been informed of the accident solicited Ms. Griffin’s potential legal matter on behalf of respondent. Ms. Griffin went to respondent’s office, where she witnessed a payment to the runner. Respondent began representing Ms. Griffin but later failed to inform her that he was suspended from practice in' June of 1996. Respondent improperly ' used another person to solicit a legal case and engaged in the unauthorized practice of law, in violation of Rules 1.4, 5.5, 7.2, and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
Count XI: In April of 1997, Wesley Dupor was involved in an automobile accident. After the accident, a runner solicited Mr. Dupor’s potential legal matter on behalf of respondent. Mr. Dupor was transported to respondent’s office, where respondent held himself out to be a lawyer, despite his disbarment. Respondent improperly solicited a client in violation of Rules 1.4, 5.5, 7.2 and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
Count XII: In April of 1996, Connie Marie Julian was involved in an automobile accident. At the scene of the accident, several runners approached Ms. Julian on behalf of respondent. Despite her condition, Ms. Julian was taken to respondent’s office instead of to the hospital, and she became a client of respondent. When respondent was suspended from practicing law in June of 1996, he failed to inform his client of the suspension. Respondent eventually settled Ms. Julian’s matter without her authorization. Respondent engaged in the unauthorized practice of law and improperly solicited a client, in violation of Rules 1.2, 1.4,1.15, 5.5, 7.2, and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
Count XIII: In November of 1994, Yolanda B. Jones was in a car accident. At the scene, a runner improperly solicited Ms. Jones’ potential legal matter. Ms. Jones became a client of respondent, who eventually settled her case without her permission. Respondent failed to give an accounting or [^explain the settlement to her. Respondent’s conduct is in violation of Rules 1.2, 1.4, 1.15, 7.2 and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
Count XIV: In June of 1997, Aurion Wilson, a minor, was involved in an automobile accident. A runner approached Ms. Wilson, improperly soliciting her potential legal matter on behalf of respondent. Ms. Wilson was taken to respondent’s office, where her mother was contacted to sign a contract of representation. At the time of the representation, respondent was disbarred. Respondent failed to give this information to his clients, held himself out as a lawyer, engaged in the unauthorized practice of law, and improperly solicited the representation of á minor child. Respondent’s conduct violates Rules 1.4, 5.5, 7.2, and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
Count XV: On June 26, 1997, Dorothy Ferrand was involved in an automobile accident. Two runners approached Ms. Ferrand directly after the accident in an attempt to obtain her legal matter on behalf of respondent. Respondent improperly solicited professional employment through another person, and he attempted to engage in the unauthorized practice, of law, in violation of Rules 5.5, 7.2, and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
Count XVI: In August of 1994, Chris Co-joe, Keshawn Mills and Mary Mills were involved in an automobile accident. A runner approached these parties directly after the accident to obtain their legal matter on behalf of respondent. Respondent improperly utilized another person to solicit representation, in violation of Rules 7.2 and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
Count XVII: In or around September of 1996, Courtney Shelling was involved in a *705 car accident. A runner approached Ms. Shelling after the accident. At that time, respondent had been disbarred. Respondent improperly' used another person to obtain representation, and he engaged in the unauthorized practice of law, in violation of Rules 1.4, 5.5, 7.2, and 8.4(a), (b), (c) and (d) of the Rules of Professional Conduct.
| fiCount XVIII: In conjunction with all of the above referenced counts, the ODC contacted respondent to obtain a formal written response. Respondent failed to reply and failed to cooperate with the ODC. As a result, the ODC requested that subpoenas be issued to require respondent’s appearance at the Office of Disciplinary Counsel. Despite numerous tries, the Sheriff could not successfully serve respondent. Accordingly, the ODC’s investigator, Willis E. Walton, attempted to serve respondent. Respondent failed to take the subpoena, despite Mr. Walton’s request, in violation of Rules 8.1 and 8.4(g) of the Rules of Professional Conduct.
DISCIPLINARY PROCEEDINGS
The ODC instituted formal charges on April 29, 1998, alleging violation of Rules 1.1, 1.2, 1.4, 1.7, 1.9, 1.15, 5.1, 5.3, 5.5, 7.2, 8.1 and 8.4 of the Rules of Professional Conduct. Respondent was served with notice of all eighteen counts against him, but he refused to accept service. Respondent failed to submit an answer to any of the charges, and the allegations were deemed admitted and proven by clear and convincing evidence pursuant to Rule XIX, § 11 E(3). The matter was then submitted for review on the record. The ODC noted the respondent’s conduct was clearly intentional. This court disbarred respondent in 1997, and he was fully aware of his ethical obligations. The ODC indicated respondent chose to violate the Rules of Professional Conduct, then aggravated his behavior by engaging in the unauthorized practice of law while soliciting numerous cases. Respondent’s failure to respond to the charges delayed the disciplinary process, diverted its limited resources, and impaired the system’s orderly functioning.
The ODC recognized the following aggravating factors: prior misconduct;[2] dishonest or selfish motive; a pattern of misconduct; multiple offenses; bad faith obstruction of the disciplinary process by intentionally failing to comply with rules or orders of the disciplinary agency; refusal to acknowledge the wrongful nature of his conduct; and victim vulnerability. The ODC knew of no mitigation factors, and suggested that the only reasonable sanction is disbarment.

Hearing Committee Recommendation

|70n October 2, 1998, the hearing committee filed its report with the ODC concluding the respondent is guilty of the unlawful payment of money to others for the purpose of obtaining clients, engaging in the unauthorized practice of law, improperly soliciting clients, failing to properly remit clients’ settlement funds and provide an accounting, holding himself out to be a lawyer despite suspension and disbarment, failing to inform his clients that he was ineligible to practice law, engaging in an improper conflict of interest against a former client by filing suit against the client without authorization, aiding and abiding others in the unauthorized practice of law, failing to supervise his office personnel and office procedure, failing to remit third party funds properly, improperly settling clients’ cases without authorization, and failing to respond and cooperate with the ODC.
The committee found no mitigating factors but indicated the following aggravating factors were present: prior misconduct, dishonesty with selfish motive, pattern of misconduct, multiple offenses, obstruction of disciplinary investigation, *706 refusal to acknowledge the wrongful nature of the conduct, and vulnerability of the victim. The committee indicated the most serious sanction, disbarment, was appropriate.

Disciplinary Board Recommendation

On March 12, 1999, the disciplinary board issued its recommendation to the court, concurring in the findings of the hearing committee. The board noted that the ODC submitted 126 exhibits to support the misconduct set forth in all eighteen counts of formal charges, and that the charges were proved by clear and convincing evidence. The Board found respondent has violated duties owed to the legal system, the profession and the public, and he has engaged in knowing and intentional misconduct.
The board did not find any mitigating factors, but it concurred with the aggravating factors set forth by the ODC. The board also noted that in his first disbarment, the Supreme Court found that respondent’s lack of experience was actually an aggravating factor. The board agreed that this remains an aggravating factor, and that no mitigating factors are present. Accordingly, the Board recommended respondent’s disbarment be extended by another five years, to run from the date of finality of the court’s judgment in this matter.
isNeither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board.
DISCUSSION
The record supports the findings of fact made by the hearing committee and disciplinary board that respondent committed the professional misconduct as charged. Among numerous other disciplinary violations, respondent knowingly and intentionally used runners to solicit business, held himself out to be a lawyer when he was suspended or disbarred, and engaged in the unauthorized practice of law. Respondent further refused to participate in the disciplinary proceedings. This conduct, combined with that involved in his prior disciplinary offense, indicates the respondent lacks the moral fitness to practice law and is a threat to his clients, the profession and the public.
Recognizing that respondent is already disbarred, we will extend the minimum period for readmission pursuant to Supreme Court Rule XIX, § 24(A) for an additional five years from the finality of the instant judgment. Louisiana State Bar Ass’n v. Krasnoff, 502 So.2d 1018 (La.1987).
DECREE
Accordingly, it is ordered that respondent, Jose L. Castro, Jr., is prohibited from petitioning this court for readmission pursuant to Supreme Court Rule XIX, § 24(A) until five years have passed from the finality of this judgment. All costs and expenses of these proceedings are assessed to respondent in accordance with Supreme Court Rule XIX, § 10.1.

 Marcus, J. not on panel. Rule IV, Part II, § 3.

. This court disbarred respondent in 1997 after he plead nolo contendere to four counts of insurance fraud for submitting altered medical records to two insurance carriers. See In re: Castro, 97-1304 (La.9/19/97), 699 So.2d 382. Before his disbarment, this court placed respondent on interim suspension in 96-1115 (La.6/7/96), 674 So.2d 986.

. As previously stated, on September 19, 1997, respondent was disbarred from practice after entering a plea of nolo contendere to four counts of insurance fraud for submitting altered medical records to two insurance carriers.