ATTORNEY DISCIPLINARY PROCEEDINGS
| .PER CURIAM.
This disciplinary proceeding involves formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Greer E. Goff, an attorney licensed to practice law in the State of Louisiana.[1]
UNDERLYING FACTS
In 1989, respondent obtained employment as a law clerk with the firm of O’Keefe, O’Keefe and Bernstein (the “O’Keefe Firm”). Upon her bar admission in October, 1989, respondent was promoted to a salaried associate’s position. In 1992 or 1993, respondent was approached by the head of the firm, former State Senator Michael O’Keefe, and asked to work with Mike Palmisano and Ernie Aviolasti. He described these individuals as “paralegals with their own clientele” and having “their own practice,” even though they were clearly not lawyers. The principal nature of the pair’s “client base” was personal injury claims. According to Mr. O’Keefe, respondent’s role would be to handle only those cases that could not be settled and had to be tried. Mr. O’Keefe explained to respondent that a separate law firm in her name would be established for Mr. Palmisano and Mr. Aviolasti to conduct their | ^activities.[2]
As a result, the law firm of Greer Goff and Associates was created. However, this law firm was totally contained within the building and operations of the O’Keefe Firm. Respondent was given offices located on the second floor, while the offices of Mr. Palmisano and Mr. Aviolasti were located on the third floor. Although Mr. Palmisano and Mr. Aviolasti were theoretically considered respondent’s employees, respondent exercised no supervision or control over their activities and conduct. She occasionally signed a settlement check or document, but never tried a case for them.
About one year after Mr. Palmisano and Mr. Aviolasti joined the firm, respondent realized they were engaging in the unauthorized practice of law with the permission of Mr. O’Keefe. She became aware the pair were acquiring new cases and using her name and law firm to do so when persons in the community that she had never met on a professional basis approached her and advised her that her law firm was representing them in a legal matter. Respondent confronted Mr. O’Keefe when she became concerned over the events, advising it was her impression Mr. Palmisano and Mr. Aviolasti would be exclusively working on the cases they had brought with them and not new cases. She advised Mr. O’Keefe that she was no longer comfortable with their arrangement and that she “didn’t want them to use [her] name.” Respondent also advised that she had secured employment with the New *1203 Orleans City Attorney’s Office. During the meeting, Mr. O’Keefe summoned the pair to try to convince respondent to proceed in their scheme. When respondent refused, Mr. O’Keefe assured her the misconduct would stop. He further encouraged her to take the job with the City of New Orleans, sharing time between the two jobs, which she did.
1 aShortly thereafter, Mr. O’Keefe formed the Law Offices of Stephen Bernstein to conduct his illegal solicitation practices out of the same building. Mr. Bernstein was a partner in the O’Keefe Firm and respondent, at some point, was aware his firm was engaged in illegal activities utilizing runners. In fact, respondent tried cases for the new firm at the direction of Mr. O’Keefe.
Approximately three years later, respondent learned from Charles Plattsmier, Chief Disciplinary Counsel, that Mr. Pal-misano and Mr. Aviolasti had continued to acquire cases under the veil of her law firm and supervision, as well as under the Law Offices of Stephen Bernstein. Respondent also learned that several persons often on the building’s premises were paid “runners” charged with the responsibility of bringing in new personal injury business to them. Respondent went to Mr. O’Keefe, who had advised he would retain counsel for her. Mr. O’Keefe hired Camille Gravel to represent respondent. Unbeknownst to respondent, Mr. Gravel was also representing Mr. O’Keefe in unrelated disciplinary proceedings. At the direction of Mr. Gravel, respondent refused to disclose anything to the ODC, asserting her Fifth Amendment privilege against self-incrimination.[3] Approximately one year later, after the ODC had entered into consent negotiations with Mr. Bernstein and this court approved the consent discipline, Mr. Plattsmier advised respondent the ODC would institute formal charges against her. With this in mind, respondent resigned from the O’Keefe Firm and retained new counsel. She and her new attorney immediately met with Mr. Platts-mier. At the time, the ODC was attempting to address the widespread problem of runner-based solicitation in the New Orleans area. According to Mr. Plattsmier’s formal hearing statement, respondent’s cooperation provided a “significant milestone in [the ODC’s] education process of understanding runnerjbased4 solicitation in the City of New Orleans and around the state.”
DISCIPLINARY PROCEEDINGS

Petition for Consent Discipline

Prior to the filing of any formal charges, respondent tendered a petition for consent discipline, admitting to violating the Rules of Professional Conduct through her failure to supervise the non-lawyers, aiding-in the unauthorized practice of law, and failing to report the professional misconduct. In exchange for her admission, respondent proposed she be suspended from the practice of law for a period of nine months, deferred in full, followed by a two year period of probation with, among others, conditions of cooperation in all related disciplinary and law enforcement proceedings and successful completion of the LSBA’s ethics school. The ODC filed a concurrence to the petition and the disciplinary board recommended it be accepted.
Upon review, this court rejected the proposed consent discipline. One member of the court concurred in the rejection of consent discipline “primarily because the nine months suspension is totally deferred.” In re: Goff, 00-3173 (La.1/12/01), 778 So.2d 1151.

*1204
Formal Charges

As a result of this court’s rejection of consent discipline, the ODC instituted formal charges against respondent alleging violations of Rules 5.3(a) (failure for law firm partner to take reasonable efforts to ensure firm has in effect measures to assure non-lawyer conduct complies with professional obligations), 5.3(b) (failure of supervising lawyer to take reasonable efforts to ensure non-lawyer’s conduct complies with professional obligations), 5.3(c) (supervising attorney’s inaction regarding direct knowledge of non-lawyer’s professional misconduct), 5.5(b) (aiding non-lawyer in | (¡engaging in unauthorized legal practice), 7.2(b) (unauthorized client solicitation), 8.3 (failure to report professional misconduct) and 8.4(a) (violating the Rules of Professional Conduct) of the Rules of Professional Conduct.[4]
Respondent filed an answer. While she admitted to the allegations of misconduct, she requested a hearing for the purpose of presenting mitigating evidence, which she claimed would merit a lesser sanction.

Hearing Committee Recommendation

After a hearing, the hearing committee determined the ODC proved allegations of professional misconduct by clear and convincing evidence based on respondent’s admission to the allegations of misconduct. It noted that respondent’s actions were both knowing and grossly negligent. The committee stated respondent violated her duty as a professional, causing injury to the profession, which had a substantial interest in eliminating runner-based solicitation.
Relying on jurisprudence from this court, the committee found the baseline sanction for respondent’s misconduct is disbarment.[5] In deviating downward from disbarment, the committee recognized that respondent was “neither the originator of the scheme nor an active participant.” Further, it found respondent “evidenced extreme remorse at her unknowing participation in the scheme and anger directed by those who involved her in the scheme.” The committee further stated respondent was |fi“obviously naive, impressed by former Senator O’Keefe’s style and demeanor and obviously unprepared to deal with or understand the implications of the activities in which she was unknowingly becoming involved.” Last, it pointed out respondent was cooperative with the ODC and furthered the investigative process in the area of runner-based solicitation in the Greater New Orleans area.
Accordingly, the committee recommended that respondent be suspended from the practice of law for a period of nine months, totally deferred, subject to a two-year period of probation subject to several conditions.[6]

*1205
Disciplinary Board Recommendation

The disciplinary board concluded respondent violated the professional rules as charged. It noted she breached her duties owed to the legal system and the profession. The board recognized that respondent’s actions were both knowing and negligent and resulted in damage to the public’s confidence in the legal system.
In addressing the issue of sanctions, the board recognized the presence of several mitigating factors: absence of a prior disciplinary record, absence of dishonest 17or selfish motive,[7] full and free disclosure to the disciplinary board, cooperative attitude toward the proceedings and remorse. No aggravating factors were cited. The board relied on Standards 5.12 and 7.2 of ABA’s Standards for Imposing Lawyer Sanctions[8] to determine suspension is the baseline sanction. Specifically, the board noted respondent’s conduct “of unwittingly enabling a runner-based solicitation scheme is suggestive of criminal conduct and sul lies the reputation of the profession.” The board pointed out that the majority of case law concerning runner-based solicitation has resulted in disbarment.[9] Finding these cases to be much more factually egregious than the instant matter, the board looked to cases involving runner-based solicitation which resulted in suspension rather than disbarment, citing In re: Lockhart, 01-1645 (La.9/21/01), 795 So.2d 309 (three-year suspension, followed by a two-year probation, imposed by consent on a newly admitted solo practitioner suffering from severe economic problems, who made a few payments to “investigators” to refer cases to the attorney, but cooperated extensively with federal authorities and self-reported his misconduct); In re: Bernstein, 98-3207 (La.1/29/99), 725 So.2d 483 (three year suspension, with one year deferred, subject to a two year probation imposed on attorney for participating in the same runner-based solicitation scheme involving the instant respondent); and In re: Brass, 97-0947 (La.6/30/97), R696 So.2d *1206 967 (two and one-half year suspension, with one year deferred, subject to two years of conditional probation imposed on an attorney who mishandled his client trust account and paid a runner to solicit cases).
The board acknowledged the proposed sanction was the same as that which was rejected earlier by this court in the consent petition. However, the board noted that, unlike the consent discipline, a record had been developed with the formal charges, a formal hearing and respondent’s sworn testimony. In accepting the proposed discipline of a fully deferred nine month suspension, subject to a two year period of conditional probation, the board stated that “[t]he instant matter is highly unusual in that the respondent, although she should have known, did not know she was facilitating a runner operation and received no financial benefit, directly or indirectly, from such operation.” Accordingly, it recommended the proposed discipline be adopted.
One board member dissented. He rejected the board’s factual findings that respondent’s conduct was unknowing and unwitting. Moreover, he noted respondent did reap financial gain through her retention of her job and receipt of indirect financial gain. He stated “[i]t was only after the disciplinary process against her had commenced that respondent had her epiphany and cooperated with ODC.”
Neither respondent nor the ODC filed objections in this court to the board’s recommendation. However, this court, on its motion, set the matter for oral argument.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), |9646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992).
In the instant matter, respondent has conceded that her conduct facilitated a runner-based solicitation scheme, although she maintains that she was an unwitting participant. Based on respondent’s admissions and other evidence in the record, we conclude the charges against her have been proven by clear and convincing evidence. Therefore, we now turn to a discussion of the appropriate sanction.
The purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass’n v. Levy, 400 So.2d 1355 (La.1981). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Unquestionably, engaging in runner-based solicitation is one of the most serious professional violations an attorney may commit. We have not hesitated to disbar attorneys who have engaged in such practices. See In re: Go-and, 01-0131 (La.2/9/01), 778 So.2d 580 (disbarment imposed for using runners to solicit personal injury clients and conviction of misprision of felony); In re: Cuccia, 99-3041 (La.12/17/99), 752 So.2d 796 (newly licensed attorney disbarred for hiring run *1207 ners to solicit cases and for hiring secretaries, legal assistants and clerical help to assist him in “processing” volumes of personal injury claims resulting in their unauthorized practice of law and his failure to properly supervise); In re: Tolchinsky, 99-1742 (La.9/3/99), 740 So.2d 109 (attorney entered consent disbarment for failure to supervise_[^and report actions of his employee, a disbarred attorney who engaged in the unauthorized practice of law and improperly solicited clients by the use of runners).
In formulating a sanction, we recognize that there are significant mitigating factors in this case. As the board observed, respondent was not the originator of the scheme, nor was she an active participant. Additionally, respondent cooperated in the ODC’s investigation and prosecution of runner-based solicitation.
Nonetheless, we would denigrate the seriousness of runner-based solicitation if we were to adopt a fully deferred suspension under the facts of this case. While respondent’s sin may have been one of omission rather than commission, the fact remains that by failing to properly monitor her practice, she facilitated others who engaged in unauthorized practice of law.
Under these circumstances, we conclude the proper discipline is a nine-month suspension from the practice of law, with six months deferred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Greer E. Goff be suspended from the practice of law for a period of nine months. It is further ordered that six months of this suspension shall be deferred. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent, a New Orleans attorney, is 46 years of age and was admitted to the practice of law in Louisiana on 10/6/89. She has no prior disciplinary record.

. According to respondent, Mr. O’Keefe sought to create a separate law firm for the personal injury business because the O'Keefe Firm was primarily a defense firm.

. It appears respondent may have been counseled to do so in order to protect Mr. Gravel's other client, Mr. O’Keefe, who was facing allegations of misconduct that if proven would warrant disbarment.

. These are the same professional violations respondent admitted to in her consent petition.

. The hearing committee relied on the following cases: In re: Grand, 01-0131 (La.2/9/01), 778 So.2d 580 (disbarment stemming from use of runners to solicit personal injury clients and conviction of misprision of felony); In re: Cuccia, 99-3041 (La. 12/17199), 752 So.2d 796 (newly licensed attorney disbarred for hiring runners to solicit cases and for hiring secretaries, legal assistants and clerical help to assist him in "processing” volumes of personal injury claims resulting in their unauthorized practice of law); In re: Castro, 99-0707 (La.6/18/99), 737 So.2d 701 (five year extension of minimum period for readmission of disbarred attorney was warranted for attorney who, among other things, used runners to solicit business and held himself out to be a lawyer while on suspension or disbarred).

.The committee recommended the following probationary conditions:
a. Full, complete and truthful testimony and cooperation with the ODC in any pending or contemplated disciplinary investigations or proceedings;
*1205 fa. Full, complete and truthful testimony and cooperation with any and all state and federal law enforcement agencies;
c. Enrollment in and successful completion of, within the two year period of probation, ethics school as sponsored by the Louisiana State Bar Association’s Practice Assistance and Improvement Committee;
d. No violations of the Louisiana Rules of Professional Conduct within the two year period of probation;
e. Prompt and full cooperation in any disciplinary investigation which may be prompted by complaints which may be filed against respondent during the period of probation; and
f. Full and prompt payment, or satisfactory arrangements for the payment of, all disciplinary costs within thirty days of a final order of the Louisiana Supreme Court.

.The board noted respondent's tax returns for the period in question indicated she had not reaped any financial gain from the solicitation scheme.

. Standard 5.12 provides suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11, which are intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft, and that seriously adversely reflects on the lawyer’s fitness to practice.
Standard 7.2 provides suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes serious or potentially serious injury to a client, the public, or the legal system.

. In addition to the disbarment cases cited by the committee, the board also relied on the case of In re: Tolchinsky, 99-1742 (La.9/3/99), 740 So.2d 109 (attorney entered consent disbarment for failure to supervise and report actions of his employee, a disbarred attorney who engaged in the unauthorized practice of law and improperly solicited clients by the use of runners).