# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                              NEWS RELEASE #059

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **6th day of December, 2017**, are as follows:

**PER CURIAM**:

2017-B -1116      IN RE: ANDRES HUMBERTO AGUILAR

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Andres Humberto Aguilar, Louisiana Bar Roll number 34176, be and he hereby is suspended from the practice of law for a period of one year and one day, with all but nine months deferred. This suspension shall be retroactive to August 2, 2017, the date of respondent's interim suspension. Following the active portion of the suspension, respondent shall be placed on unsupervised probation for two years, subject to the conditions set forth in this opinion. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

SUPREME COURT OF LOUISIANA

NO. 2017-B-1116

IN RE: ANDRES HUMBERTO AGUILAR

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Andres Humberto Aguilar, an attorney licensed to practice law in Louisiana but currently on interim suspension pursuant to a joint petition of the parties filed in July 2017. *In re: Aguilar*, 17-1320 (La. 8/2/17), 222 So. 3d 706.

**UNDERLYING FACTS**

*The Charbonneau Matter*

The following facts are not in dispute, having been stipulated to by the parties.

In February 2013, respondent was hired through the Pro Bono Project to handle Shawn Charbonneau's divorce. In July 2014, Mr. Charbonneau checked the court records and discovered that respondent had not filed any pleadings on his behalf.

Soon thereafter, Mr. Charbonneau filed a disciplinary complaint against respondent. The ODC sent respondent notice of the complaint via certified mail. All letters sent to respondent were returned unclaimed. The ODC attempted to contact respondent via telephone and e-mail, but respondent failed to respond to these attempts.

Respondent relocated to Texas but failed to update his address with the Louisiana State Bar Association ("LSBA"). The ODC was able to serve respondent with a copy of the complaint at his new address in Texas on February 7, 2015.

*The Grant Matter*

The following facts are not in dispute, having been stipulated to by the parties.

Kelly Grant was injured in an automobile accident, and Terry Williams hired respondent to handle the personal injury case on Ms. Grant's behalf. Respondent paid Mr. Williams $500 in cash for the referral of Ms. Grant and another client. Ms. Grant met respondent for an initial consultation at a café in Shreveport. Once Ms. Grant completed medical treatment for her injuries, respondent failed to communicate with her about the status of her case; he failed to answer her telephone calls and did not place any telephone calls to her.

In April 2014, Ms. Grant filed a disciplinary complaint against respondent. The ODC sent respondent notice of the complaint via certified mail. All letters sent to respondent were returned unclaimed. The ODC attempted to contact respondent via telephone and e-mail, but respondent failed to respond to these attempts.

Respondent relocated to Texas but failed to update his address with the LSBA. The ODC was able to serve respondent with a copy of the complaint at his new address in Texas on February 7, 2015.

**DISCIPLINARY PROCEEDINGS**

In December 2015, the ODC filed formal charges against respondent. In June 2016, the ODC filed amended formal charges against respondent. In the formal charges and amended formal charges, the ODC alleged that respondent's conduct, as set forth above, violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in

2

representing a client), 1.4 (failure to communicate with a client), 1.16 (declining or terminating representation), 7.4(a) (solicitation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

Respondent, through counsel, answered the formal charges. He did not file an answer to the amended formal charges. However, prior to a formal hearing in this matter, respondent and the ODC filed a joint stipulation of facts, wherein respondent admitted to the facts as set forth above. The parties further stipulated that the mitigating factor of inexperience in the practice of law (admitted 2011) is present.

### *Formal Hearing*

The hearing committee conducted a hearing in July 2016. Both respondent and the ODC introduced documentary evidence. Respondent called one witness to testify before the committee. He also testified on his own behalf and on cross-examination by the ODC.

### RESPONDENT'S TESTIMONY

Respondent testified that his first job out of law school was with the Blanchard Walker law firm in Shreveport. When he first started there, he did really well. After a time, he could no longer get his work done, and he was fired from Blanchard Walker. He then decided to be a solo practitioner.

Regarding Mr. Charbonneau's legal matter, respondent testified that he told Mr. Charbonneau he was ready to file the divorce pleadings but needed a pauper

3

affidavit from Mr. Charbonneau first so they could file without paying court costs. He denied telling Mr. Charbonneau that he had filed the divorce pleadings.

Regarding the Grant matter, respondent testified that an attorney friend of his knew Mr. Williams and introduced respondent to Mr. Williams, who indicated he worked at ChiroCare. Mr. Williams referred Ms. Grant's case to him along with another potential client's case. Respondent did not end up taking the other potential client's case. Respondent met with Ms. Grant once and then did not do anything more on the case. Ms. Grant called him a few times, but he did not return those calls.

When Mr. Williams first referred the cases to respondent, there was no discussion about respondent paying Mr. Williams for the referrals. However, about a week later, Mr. Williams called respondent and said that respondent owed him $500 for the referrals. Mr. Williams' request was so unexpected that respondent "panicked a little bit and froze up." He then met Mr. Williams in a McDonald's parking lot and paid him $500 in cash. However, it was never part of his business plan as a solo practitioner to pay for referrals.

Respondent also indicated that he knew he was receiving certified mail notices and telephone calls from the ODC between July 2014 and February 2015, but he did not know what they were about. At the time, he had a lot of responsibilities he was not taking care of. He was not able to bring himself to take care of them because he had built up a "wall of distractions."

About two months after starting his solo practice, respondent got a job with TestMasters teaching the LSAT prep course. He is still currently employed by TestMasters and lived in Texas from the summer of 2013 until April 2016 before moving back to Shreveport.

When he was fired from Blanchard Walker in 2013, respondent went to a psychiatrist. He was diagnosed with ADHD and prescribed Concerta. This medication turned out to be counter-productive because respondent actually suffers

4

from obsessive compulsive disorder ("OCD").  Respondent was taking Concerta while he was representing Mr. Charbonneau and Ms. Grant.  He has since stopped taking Concerta and now sees a therapist once a week as treatment for OCD. Respondent also plans to see a psychiatrist for treatment with medication.[1]

CLAUDIA HARRIS' TESTIMONY

Ms. Harris, a licensed social worker, testified that she diagnosed respondent with OCD and has been treating him for same since May 2016.  She described OCD as an anxiety-driven disorder that is characterized by obsessions, which are thoughts that are related to uncertainty, and compulsions, which are behaviors that may address those anxious thoughts.  Respondent's compulsive behavior is avoidance. She believes medication will help respondent and encouraged him to see a psychiatrist.  However, she is working with him to limit his distractions, live with his uncertainty, and to tolerate his anxiety through cognitive behavioral therapy.  She also testified that respondent's OCD does not make him unable to perform the duties of an attorney.

---

[1] Respondent saw Elizabeth F. Kieff, MD, a psychiatrist in Chicago, Illinois on July 27, 2016.  Dr. Kieff confirmed respondent's OCD diagnosis, stating that, "[h]e, like many individuals with OCD, has the propensity to engage in compulsions, avoidance and distraction as means to self-soothe and manage the anxiety associated with distressing obsessions ("intrusive thoughts").  This has meant at times avoiding responsibilities that, at other moments in his life, he has been able to manage."  She indicated that she is working with him to find local providers for both therapy and psychiatry.

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee accepted the joint stipulations agreed to by the parties. The committee also made additional factual findings as follows:

In the Charbonneau matter, respondent communicated to Mr. Charbonneau in June 2014 that he had filed the divorce petition. However, a review of the court records reflected that respondent had not filed any paperwork for the divorce. Additionally, the evidence shows that respondent failed to communicate with Mr. Charbonneau. In the Grant matter, the stipulated facts and testimony revealed that respondent obtained a personal injury case through a "runner" to whom he paid a $500 referral fee. Respondent met with Ms. Grant, and the client sought medical treatment at ChiroCare. Once Ms. Grant completed the treatment, respondent failed to communicate with her regarding the status of the case and ceased answering telephone calls from both Ms. Grant and ChiroCare. Based on these facts, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges and amended formal charges.

The committee determined that respondent knowingly violated duties owed to his clients, the public, the legal system, and the legal profession. Respondent's conduct caused actual harm to his clients; Mr. Charbonneau's divorce petition was never filed, and Ms. Grant's personal injury claim prescribed. His conduct in failing to complete a matter he accepted through the Pro Bono Project and his interaction with a "runner" for personal injury matters were betrayals of the public's trust in the legal system. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined the baseline sanction is suspension.

In aggravation, the committee found the following: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of

6

the disciplinary agency, vulnerability of the victim, and indifference to making restitution. In mitigation, the committee found the absence of a prior disciplinary record, personal or emotional problems (respondent suffers from OCD), inexperience in the practice of law, and remorse.

In light of the above findings, the committee recommended respondent be suspended from the practice of law for one year, with all but nine months deferred, subject to the following conditions: (1) he make any restitution deemed necessary, (2) he continue counseling and/or therapy for OCD, and (3) he attend ten additional continuing legal education hours in the area of law office management.

Both respondent and the ODC filed objections to the committee's recommendation. Respondent argued that the sanction is too harsh, while the ODC argued that the sanction is too lenient.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings are supported by the record and are not manifestly erroneous. According to the board, respondent neglected his clients' legal matters and failed to communicate with them. He admitted to paying a runner $500 for two personal injury clients, one of whom was Ms. Grant, solicited following an automobile accident. Respondent agreed to represent Ms. Grant and signed a contingency fee agreement with her. Thereafter, he did little work on Ms. Grant's legal matter. After Ms. Grant completed treatment at ChiroCare, the healthcare provider to which the runner had referred her, respondent did not communicate with Ms. Grant and allowed her claim to prescribe. He did not provide Ms. Grant with information pertaining to his malpractice coverage or carrier or otherwise make restitution to her. While the record fails to establish with any certainty the value of Ms. Grant's claim (if any) and raises questions about her medical treatment because it was directed by

7

the runner, the board found that respondent must make restitution to Ms. Grant as appropriate. Furthermore, respondent initially failed to cooperate with the ODC in its investigation of the disciplinary complaints. However, once he was served with the formal charges, he filed a response, made himself available to be deposed by the ODC, entered into a joint stipulation with the ODC, and has otherwise been cooperative. Based on these facts, the board determined that the committee correctly concluded respondent violated Rules 1.3, 1.4, 1.16, 7.4(a), 8.1(c), 8.4(a), 8.4(b) and 8.4(c) of the Rules of Professional Conduct.

The board determined respondent knowingly violated duties owed to his clients, the public, and the legal profession. His conduct caused actual harm. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined the baseline sanction ranges from suspension to disbarment. The board agreed with the aggravating and mitigating factors found by the committee.

After reviewing this court's prior jurisprudence addressing similar misconduct, the board recommended respondent be suspended from the practice of law for one year, with all but nine months deferred, followed by two years of probation, with the following conditions: (1) respondent shall attend ten additional hours of continuing legal education in law office management, (2) he shall sign a contract with the Judges and Lawyers Assistance Program ("JLAP") relative to his continued counseling and/or therapy, and (3) he shall make restitution as appropriate.

The ODC filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

8

**DISCUSSION**

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

Respondent neglected two legal matters, failed to communicate with two clients, paid for two case referrals, and failed to cooperate with the ODC in two investigations. In doing so, respondent has violated the Rules of Professional Conduct as charged in the formal charges and amended formal charges.

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

The record supports a finding that respondent knowingly violated duties owed to his clients, the public, and the legal profession. His actions caused actual harm. The baseline sanction in this matter is suspension. The aggravating and mitigating factors found by the committee and adopted by the board are supported by the record.

Turning to the issue of an appropriate sanction, we find guidance from the cases of *In re: Goff*, 02-1899 (La. 1/28/03), 837 So. 2d 1201, and *In re: Christenberry*, 13-2461 (La. 1/27/14), 132 So. 3d 388. In *Goff*, an attorney facilitated a runner-based solicitation scheme; however, the attorney maintained that she was an unwitting participant. For this misconduct, we suspended the attorney from the practice of law for nine months, with six months deferred. In *Christenberry*, an attorney neglected two legal matters, failed to communicate with a client, failed to timely refund unearned fees to a client, and failed to cooperate with the ODC in an investigation. For this misconduct, we suspended the attorney from the practice of law for one year and one day, with all but three months deferred, followed by two years of supervised probation.

Based on this jurisprudence, we find the appropriate sanction for respondent's misconduct is a suspension from the practice of law for a period of one year and one day. However, mindful of the mitigating factors, we will defer all but nine months of this sanction. Following completion of the active portion of his suspension, respondent shall be placed on probation for two years, subject to the conditions recommended by the board, as follows: (1) respondent shall attend ten additional hours of continuing legal education in law office management, (2) he shall sign a contract with JLAP relative to his continued counseling and/or therapy, and (3) he shall make restitution as appropriate.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Andres Humberto Aguilar, Louisiana Bar Roll number 34176, be and he hereby is suspended from the practice of law for a period of one year and one day, with all but nine months deferred. This suspension shall be retroactive to August 2,

10

2017, the date of respondent's interim suspension. Following the active portion of the suspension, respondent shall be placed on unsupervised probation for two years, subject to the conditions set forth in this opinion. The probationary period shall commence from the date respondent and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.